Bryan A. Merryman (SBN 134357)
bmerryman@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

Attorneys for Defendant
BLUETRITON BRANDS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| PERRY BRUNO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUETRITON BRANDS, INC.,<br><br>Defendant. | Case No. 2:24-cv-01563 MWF (JPRx)<br><br>**DEFENDANT BLUETRITON BRANDS, INC.'S:**<br><br>**(1) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT; AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Request for Judicial Notice Filed Concurrently]**<br><br>Date:  May 6, 2024<br>Time:  10:00 a.m.<br>Courtroom:  5A<br>Judge:  Hon. Michael W. Fitzgerald |

## NOTICE OF MOTION AND MOTION TO DISMISS

NOTICE IS HEREBY GIVEN that on May 6, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald, Judge presiding, of the United States District Court for the Central District of California, 350 West First Street, Courtroom 5A, Los Angeles, CA 90012, defendant BlueTriton Brands, Inc. ("BTB") will move this Court to dismiss plaintiff's first amended complaint with prejudice.

This motion is made, pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), on the following grounds: (1) Sections 403A and 337(a) of the federal Food, Drug, and Cosmetic Act expressly preempt plaintiff's claims; (2) the first amended complaint fails to state a claim upon which relief may be granted; (3) the first amended complaint should be dismissed under the primary jurisdiction doctrine to allow FDA to determine what concentration of microplastics might violate FDA's regulations concerning "spring water" and consider technical and policy issues better suited for decision by FDA; and (4) plaintiff lacks standing to seek injunctive relief and to assert claims on behalf of consumers outside of California.

This motion is based on this notice of motion, the memorandum of points and authorities, the request for judicial notice, the pleadings and documents on file, and argument and other matters as may be presented to the Court at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 22, 2024.

Dated:  April 1, 2024                    WHITE & CASE LLP

                                         By:  */s/ Bryan A. Merryman*
                                              Bryan A. Merryman

                                         Attorneys for Defendant
                                         BLUETRITON BRANDS, INC.

- 1 -

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................... 1

II.   BACKGROUND ...................................................................................... 2

III.  LEGAL STANDARD ............................................................................. 4

IV.   ARGUMENT .......................................................................................... 4

    A.   Bruno's Claims Are Preempted ................................................... 5

    B.   Bruno Fails To State A Claim Upon Which Relief May Be
        Granted ......................................................................................... 8

        1.   Bruno Fails To Plausibly Allege The Arrowhead® Brand
               Bottled Spring Water He Purchased Contained
               Microplastics ..................................................................... 8

        2.   The Words "100% Mountain Spring Water" Are
               Unlikely To Deceive A Reasonable Consumer ...................... 10

    C.   To The Extent Bruno Bases His Claims On Nondisclosure, They
        Fail ............................................................................................. 13

    D.   Bruno Fails To State A Claim Under The UCL's "Unfair" and
        "Unlawful" Prongs ..................................................................... 15

    E.   Plaintiff Fails to Sufficiently Allege Reliance ........................... 16

    F.   Bruno Fails to Allege Actual Injury and Damages ..................... 17

    G.   Alternatively, Bruno's Request For Injunctive Relief And
        Claims On Behalf Of Consumers Outside Of California Should
        Be Dismissed For Lack Of Standing ........................................... 18

    H.   Alternatively, Bruno's Complaint Should Be Dismissed Under
        the Primary Jurisdiction Doctrine ............................................. 20

V.    CONCLUSION ...................................................................................... 21

AMERICAS 126652331

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 5, 9, 10

*Babaian v. Dunkin' Brands Grp., Inc.*,
No. LACV 17-4890, 2018 WL 11445614 (C.D. Cal. Feb. 16, 2018)................ 17

*Baker v. Nestlé S.A.*,
No. 2:18-cv-03097, 2019 WL 960204 (C.D. Cal. Jan. 3, 2019) .............. 7, 19, 20

*Benavides v. Kellogg Co.*,
No. CV 10-2294, 2011 WL 13269720 (C.D. Cal. Mar. 21, 2011) .................... 14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .............................................................. 10

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
No. C 10-01044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) .......................... 12

*Chong v. Nestlé Water N. Am., Inc.*,
No. 20-56373, 2021 WL 4938128 (9th Cir. Oct. 22, 2021)......................... 15, 16

*Chong v. Nestlé Waters N. Am., Inc.*,
No. CV 19-10901, 2020 WL 7690175 (C.D. Cal. Nov. 30, 2020) .................... 15

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ............................................................. 19

*Collyer v. Catalina Snacks Inc.*,
No. 23-cv-00296, 2024 WL 202976 (N.D. Cal. Jan. 18, 2024).......................... 8

*Daugherty v. American Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ...................................................... 13, 14

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ................................................................. 5

*Forsher v. J.M. Smucker Co.*,
612 F. Supp. 3d 714 (N.D. Ohio 2020) ................................................ 11

- 2 -

*Gomez v. Jelly Belly Candy Co.*,
    No. EDCV 17-00575, 2017 WL 2598551 (C.D. Cal. June 8, 2017) .................. 16

*Gumner v. PepsiCo, Inc.*,
    No. SACV 23-00332, 2023 WL 9019040 (C.D. Cal. Aug. 3, 2023) ................ 16

*Guzman v. Polaris Indus., Inc.*,
    No. 8:19-cv-01543, 2020 WL 2477684 (C.D. Cal. Feb. 13, 2020) .................. 16

*Janda v. T-Mobile USA, Inc.*,
    378 F. App'x 705 (9th Cir. 2010)......................................................................... 10

*Joslin v. Clif Bar & Co.*,
    No. 4:18-cv-04941, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .................. 18

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 18

*Moore v. Kayport Package Express*,
    885 F.2d 531 (9th Cir. 1989)................................................................................. 9

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021).................................................................... 11, 12, 13

*Murray v. Elations Co.*,
    No. 13-cv-02357, 2014 WL 3849911 (S.D. Cal. Aug. 4, 2014) ....................... 10

*Nemphos v. Nestlé Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ................................................................................ 6

*Ochoa v. Church & Dwight Co.*,
    No. 5:17-cv-02019, 2018 WL 4998293 (C.D. Cal. Jan. 30, 2018) ..................... 6

*Organic Cannabis Found., LLC v. Commissioner*,
    962 F.3d 1082 (9th Cir. 2020) ............................................................................. 3

*Otto v. Abbott Lab'ys, Inc.*,
    No. CV 12-1411, 2013 WL 12132064 (C.D. Cal. Mar. 15, 2013) .............. 10, 11

*Patane v. Nestlé Waters N. Am., Inc.*,
    314 F. Supp. 3d 375 (D. Conn. 2018) ........................................................ 6, 7, 8

*Punian v. Gillette Co.*,
    No. 14–cv–05028, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) .................... 15

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ................................................................5

*Sue Shin v. Campbell Soup Co.*,
   No. CV 17-1082, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ........................16

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
   307 F.3d 775 (9th Cir. 2002) ..............................................................19

*Tran v. Sioux Honey Ass'n Coop.*,
   No. 8:17-cv-110, 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) .......................20

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ................................................................7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................5, 12

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ......................................................13, 15

*Young v. Mophie, Inc.*,
   No. SACV 19-827, 2019 WL 5173770 (C.D. Cal. Oct. 9, 2019) .......................18

**FEDERAL STATUTES**

21 C.F.R. § 165.110(a)(2)(vi) ...............................................3, 4, 7, 8, 12

21 C.F.R. § 165.110(b) .......................................................................3, 13

21 U.S.C.A. § 343(g) .......................................................................4, 6, 7

21 U.S.C. § 337(a) .............................................................................6, 8

21 U.S.C. § 343–1(a)(5) ...................................................................6, 7

28 U.S.C. § 1332(d) ...............................................................................5

28 U.S.C. § 1453 ....................................................................................5

28 U.S.C. § 1441 ....................................................................................4

28 U.S.C. § 1446 ....................................................................................4

- 4 -

1

### FEDERAL RULES

2   Fed. R. Civ. P. 8.............................................................................................. 1

3   Fed. R. Civ. P. 9(b)......................................................................................... 1

4   Fed. R. Civ. P. 12(b)(1).................................................................................. 1

5   Fed. R. Civ. P. 12(b)(6).................................................................................. 1

6   Fed. R. Evid. 201(b) ....................................................................................... 3

7

8

### STATE STATUTES

9    Cal. Bus. & Prof. Code § 17200 ..................................................................... 8

10   Cal. Bus. & Prof. Code § 17500 ..................................................................... 8

11   Cal. Civ. Code § 1750..................................................................................... 8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Perry Bruno previously attempted to state claims under California's consumer protection laws based on allegations that the claim "100% Mountain Spring Water" on the label of Arrowhead® Brand Mountain Spring Water led him to believe it was free of "microplastics," *i.e.*, plastic particles found throughout Earth's ecosystems. BTB moved to dismiss, asserting that the federal Food, Drug, and Cosmetic Act ("FDCA") preempts Bruno's claims, and, regardless, Bruno failed to allege their essential elements.  In particular, Bruno did not plausibly allege that the product he purchased actually contained microplastics, or that a reasonable consumer would interpret "100% Mountain Spring Water" to guarantee the absence of microplastics found throughout nature.

In response, Bruno filed his First Amended Complaint ("FAC").  In the FAC, Bruno retreats from his original theory that, when purchasing water sourced entirely from mountain springs, the claim "100% Mountain Spring Water" deceived him. Instead, he rewrites the label claim to read "100% Water," and alleges he was misled to believe the product was a "'100%' water beverage" when in fact it contained microplastics.  This selective reading of the plain language of the "100% Mountain Spring Water" claim is just as implausible, because a reasonable consumer would not slice and dice the label as Bruno posits.  Rather, as many cases have held, a reasonable consumer would view the complete label claim in context, and conclude that 100% of the water came from mountain springs—which is true.

For the reasons explained below, Bruno's claims for violation of California's False Advertising Law ("FAL"), Unfair Competition Law (UCL"), and Consumers Legal Remedies Act ("CLRA") suffer from the same pleading failures that plagued his original complaint.  Accordingly, the Court should dismiss Bruno's claims with prejudice, because they either are preempted or fail to state a claim.

Alternatively, Bruno's claims should be dismissed under the primary

- 1 -

jurisdiction doctrine.  The regulation of the contents and labeling of bottled water falls squarely within the jurisdiction of the federal Food and Drug Administration ("FDA") and thus FDA should determine whether spring water may contain microplastic particles, as another court in this district recently held in the context of "purified water."  *See Baker v. Nestlé S.A.*, No. 2:18-cv-03097, 2019 WL 960204 (C.D. Cal. Jan. 3, 2019).

## II.    BACKGROUND

BTB manufactures and distributes many unique bottled water products, including Arrowhead® Brand 100% Mountain Spring Water.  FAC ¶ 9.  "The FDA protects consumers of bottled water through the [FDCA], which makes manufacturers responsible for producing safe, wholesome, and truthfully labeled food products."  U.S. Food & Drug Admin., *Bottled Water Everywhere: Keeping it Safe* (2022), *available at* https://www.fda.gov/consumers/consumer-updates/bottled-water-everywhere-keeping-it-safe (last visited Apr. 1, 2024), RJN Ex. 1.[1]  BTB must comply with FDA regulations, known as "standards of identity," for products labeled "spring water."  The standard for "spring water" is, in relevant part:

> The name of water derived from an underground formation from which water flows naturally to the surface of the earth may be "spring water." Spring water shall be collected only at the spring or through a bore hole tapping the underground formation feeding the spring …. [s]pring water collected with the use of an external force shall be from the same underground stratum as the spring ... and shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth.

21 C.F.R. § 165.110(a)(2)(vi).  FDA also sets "standard of quality" regulations that limit the trace levels of common atmospheric contaminants in bottled water.  *See* 21 C.F.R. § 165.110(b)(4).  Bruno does not, and cannot, allege that the Arrowhead® brand bottled spring water he purchased was not "derived from an underground

---

[1] The Court may take judicial notice of government websites under Federal Rule of Evidence 201(b).  *Organic Cannabis Found., LLC v. Commissioner*, 962 F.3d 1082, 1096 (9th Cir. 2020).

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

formation from which water flows naturally to the surface of the earth," or that it lacked "all the physical properties" and "the same composition and quality" as "water that flows naturally to the surface of the earth." *See generally* FAC. Nor does he allege the water he purchased violated applicable standards of quality. *Id.*

Bruno alleges that on October 19, 2022, he bought an unspecified Arrowhead® brand bottled water product labeled "100% Mountain Spring Water" from a Walmart in an unidentified location. FAC ¶ 28. Bruno does not allege whether he consumed the water he purchased or used (or could not use) it for any other purpose. *See generally id.* Bruno nevertheless alleges he suffered injury because he paid a premium for "100% Mountain Spring Water" containing "microplastics." *Id.* ¶¶ 38-46.

"Microplastics," or "plastic particles ranging in size from 5 mm to 1 nm … have been found in every ecosystem on the planet from the Antarctic tundra to tropical coral reefs." U.S. Environmental Protection Agency, *Microplastics Research*, *available at* https://www.epa.gov/water-research/microplastics-research (last visited Apr. 1, 2024), RJN Ex. 2.[2] FDA does not require bottled water manufacturers to disclose, or even test for, the presence of microplastics. *See* 21 U.S.C.A. § 343(g); 21 C.F.R. § 165.110(a)(2)(vi). Bruno alleges a study hypothesized that "frequent opening and closing" of plastic bottles may cause "microplastic contamination," FAC ¶ 14, but he does not specify whether microplastics that purportedly tainted the water *he* purchased were found at the source or introduced through bottling. *See generally id.* Nor does he specify the type of "microplastics" the water allegedly contained. *Id.* ¶¶ 9, 28-29. Bruno also does not allege he tested any of the water he purchased. *See generally id.* Instead, he relies on a 2018 "global study" of 259 bottles of water "across 11 brands purchased in 19 locations in 9 countries"—not including Arrowhead® or other "spring water"

---

[2] The Court may also take judicial notice of Exhibit 2 under Federal Rule of Evidence 201(b) because it is a government website. *Organic Cannabis Found., LLC*, 962 F.3d at 1096.

1  brands—which concluded that "[n]inety-three percent" of the samples "showed signs
2  of microplastic contamination." *Id.* ¶ 13.

3        Based on these allegations, on January 23, 2024, Bruno filed a complaint in
4  the Superior Court of Los Angeles County, which he served on BTB on January 25,
5  2024, and which BTB removed to this Court on February 26, 2024.  BTB moved to
6  dismiss Bruno's original complaint on March 4, 2024.  Rather than responding,
7  Bruno filed his FAC.  In the FAC, Bruno asserts three claims for relief: (1) violation
8  of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*; (2) violation of the UCL, Cal.
9  Bus. & Prof. Code § 17200 *et seq.*; and (3) violation of the CLRA, Cal. Civ. Code §
10  1750 *et seq.*  FAC ¶¶ 63-93.  Bruno again seeks to certify a nationwide class and a
11  California subclass of purchasers.  *Id.* ¶¶ 49-50.

12      **III.  LEGAL STANDARD**

13        "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks
14  a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable
15  legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive
16  a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a
17  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
18  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts must
19  disregard legal conclusions, even when disguised as facts.  *See id.* at 681.

20        Rule 9(b) governs fraud-based allegations.  "Rule 9(b) demands that, when
21  averments of fraud are made, the circumstances constituting the alleged fraud be
22  specific enough to give defendants notice of the particular misconduct so that they
23  can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,
24  1106 (9th Cir. 2003) (cleaned up).  Dismissal without leave to amend is appropriate
25  where "the pleading could not possibly be cured by the allegation of other facts."
26  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016).

27      **IV.  ARGUMENT**

28        Bruno's claims should be dismissed on several grounds.  To begin, the FDCA

- 4 -

preempts them, because Bruno may not impose additional or different requirements or enforce FDA's standard of identity for "spring water."

Bruno also fails to allege the elements of his claims with the particularity Rule 9(b) requires. *First*, he alleges no factual support for his contention that the Arrowhead® brand bottled spring water he purchased contained microplastics. *Second*, Bruno fails to plead a reasonable consumer is likely to be deceived, because no reasonable consumer would interpret the claim about the *source* of "100% Mountain Spring Water" to guarantee the absence of microplastics. *Third*, Bruno fails to plead a nondisclosure-based claim under the FAL, UCL, or CLRA, because he alleges no factual support for the conclusion that microplastics in bottled water threaten consumer safety. *Fourth*, for the same reasons, Bruno fails to state a claim under the "unfair" or "unlawful" prongs of the UCL. *Fifth*, Bruno fails to allege reliance with specificity. *Sixth*, Bruno fails to allege he suffered injury because of the challenged conduct. Each of these significant deficiencies warrants dismissal.

In addition, Bruno lacks standing to seek injunctive relief because he alleges no real and immediate threat of repeated injury, or to represent purchasers outside of California because he alleges no injury in other states. Dismissal is also warranted under the primary jurisdiction doctrine to allow FDA to consider technical and policy issues involving microplastics in "spring water" better suited for decision by FDA.

## A. Bruno's Claims Are Preempted

Sections 403A and 337(a) of the FDCA preempt Bruno's claims. Congress enacted Section 403A, 21 U.S.C. § 343–1(a)(5), in connection with the federal Nutrition Labeling and Education Act of 1990 ("NLEA"). *Ochoa v. Church & Dwight Co.*, No. 5:17-cv-02019, 2018 WL 4998293, at *3-5 (C.D. Cal. Jan. 30, 2018) (discussing NLEA and section 403A). Section 403A "forbid[s] states from establishing any requirement that is 'not identical to' the federal requirements in five areas of food labeling," including the "standard of identity" set forth in Section 343(g). *Nemphos v. Nestlé Waters N. Am., Inc.*, 775 F.3d 616, 619-20 (4th Cir. 2015).

Thus, any inconsistent, additional, or different state labeling requirement—including "common-law rules and duties from the judiciary"—is expressly preempted. *Nemphos*, 775 F.3d at 619-20. Section 337(a) provides that actions to "enforce[], or to restrain" FDCA violations "shall be by and in the name of the United States." 21 U.S.C. § 337(a). It has "an implied preemptive effect" on claims "based on conduct that was wrongful solely because it violated the FDCA." *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 385 (D. Conn. 2018) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)).

Bruno challenges BTB's claim of "100% Mountain Spring Water" on the label of Arrowhead® brand bottled spring water because the water allegedly contained "microplastics." Because FDA has issued a standard of identity for bottled "spring water," 21 C.F.R. § 165.110(a)(2)(vi), "a State may not impose a 'spring water' requirement that varies in scope or substance from the federal definition." *Patane*, 314 F. Supp. 3d at 385. This standard provides that "spring water" must be "derived from an underground formation from which water flows naturally to the surface of the earth," and "have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth." 21 C.F.R. § 165.110(a)(2)(vi). Bruno alleges the water he purchased is "not 100% Mountain Spring Water" because it purportedly "contained microplastics." FAC ¶¶ 20, 29. He does not specify how microplastics allegedly tainted the water; that is, whether they were there at its source, or migrated from its plastic packaging.

Either way, Bruno's claims are preempted. If Bruno alleges BTB failed to disclose that spring water otherwise meeting the standard of identity may contain microplastics, then Section 403A bars his claims because such a disclosure requirement would depart from the FDCA. *See* 21 U.S.C.A. § 343(g); 21 C.F.R. § 165.110(a)(vi). Even if such a disclaimer "would be consistent with the requirements imposed by the [FDCA], consistency is not the test; identity is." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011). As long as Arrowhead® spring

- 6 -

water has the same physical properties, composition, and quality as "water that flows naturally to the surface of the earth" (and the complaint makes no allegation it does not), claims seeking to prevent BTB from labeling it as "100% Mountain Spring Water" are preempted. *See Baker*, 2019 WL 960204, at *1-2 (state-law claims based on labeling "purified water" as "pure" preempted).

Bruno's attempt in the FAC to rewrite "100% Mountain Spring Water" as "100% water," *see* FAC ¶ 35, does not change the analysis. Reading the complete label claim in context leaves no doubt he seeks to impose requirements on BTB that impermissibly deviate from the governing standard of identity. Bruno challenges BTB's use of the term "100% Mountain Spring Water" to describe a product that, according to its standard of identity, must consist *entirely*—that is, *100%*—of water with the same physical properties, composition, and quality as water that "flows naturally to the surface of the earth," regardless of potential microplastics content. *See* 21 C.F.R. § 165.110 (a)(2)(vi). Bruno's claim therefore would require BTB to refrain from labeling Arrowhead® spring water as *exactly what FDA requires spring water to be*. Such a requirement plainly would depart from the FDCA, and for that reason, Bruno's claims are preempted. *Baker*, 2019 WL 960204, at *1-2.

If Bruno instead theorizes that BTB's bottling process contaminated the spring water he purchased, then section 337(a) prempts his claims. "[A] plaintiff may not simply dress up a generic state law claim of wrongful conduct to prosecute conduct that is 'wrong' only because it happens to violate the federal law requirements of the FDCA." *Patane*, 314 F. Supp. 3d at 386. If Bruno alleges BTB sold "spring water" lacking the "properties, composition, and quality" of "water that flows naturally to the surface of the earth," he essentially claims BTB violated the FDCA by selling "spring water" that violated its standard of identity. *See* 21 C.F.R. § 165.110(a)(2)(vi). "Despite the efforts plaintiff[] make[s] to clothe []his claims in the garb of state law, the reality is that [he is] suing solely to enforce the FDCA's federal 'spring water' standard," which section 337(a) forbids. *Patane*, 314 F. Supp.

3d at 389; *accord Collyer v. Catalina Snacks Inc.*, No. 23-cv-00296, 2024 WL 202976, at *6 (N.D. Cal. Jan. 18, 2024) (finding claim that "would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was a violation" preempted).

### B. Bruno Fails To State A Claim Upon Which Relief May Be Granted

In any event, Bruno fails to state a claim. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising..." Cal. Bus. & Prof. Code § 17200. The FAL renders it "unlawful for any person … with intent directly or indirectly … to make or disseminate … any statement, concerning … real or personal property … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). Bruno does not, and cannot, allege BTB engaged in fraudulent, unfair, or unlawful conduct, which warrants dismissal of his claims.

### 1. Bruno Fails To Plausibly Allege The Arrowhead® Brand Bottled Spring Water He Purchased Contained Microplastics

Bruno's claims depend entirely on the assumption that the water he bought "contained microplastics." FAC ¶ 29. This conclusion finds no factual support in his allegations. *See Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) ("[M]ere conclusory allegations of fraud are insufficient."). Bruno premises his claims on a 2018 study by third party Orb Media (the "Orb Study") that tested 259 bottles from eleven global water brands—*not including* Arrowhead® or any other "spring water" brand—and found "signs of microplastic contamination." FAC ¶ 13. That is, Bruno's claims rest entirely on a small sample of *different* types and brands of water tested more than four years before his earliest purchase. Such speculative, conclusory allegations fall well "short of the line between possibility and

- 8 -

plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

*Fahey on behalf of D.C. v. Deoleo USA, Inc*. is instructive.  There, the plaintiff asserted a claim under an analogous consumer protection statute, alleging the Bertolli extra virgin olive oil ("EVOO") he bought at a D.C. Walmart in 2018 was merely "virgin."  No. 18-2047, 2018 WL 5840664, at *3 (D.D.C. Nov. 8, 2018).  The plaintiff based his claim entirely on a report produced by UC Davis in 2010, which concluded a small sample of Bertolli EVOO bottles contained only "virgin" oil.  *Id.* at *2.  The court rejected the plaintiff's theory for three reasons.  *First*, it held the "methods used in the UC Davis study," which tested only three bottles from different lots, could not "support general conclusions about the quality of" Bertolli's EVOO. *Id.  Second*, it rejected the plaintiff's "temporal assumption," because he "offer[ed] no explanation for why the testing done … eight years ago should tell us anything about the quality of the Bertolli EVOO on store shelves today." *Id.  Third*, it held testing of bottles bought in *California* did not "plausibly suggest that the bottle" bought in *D.C.* "was similarly deficient." *Id.*

Bruno's claims suffer from the same failings. *First*, the Orb Study sampled a small number of bottles—259—by comparison to the billions of liters of bottled water produced around the world each year.[3]  Unlike in *Fahey*, where the same brand was tested, the Orb Study tested neither Arrowhead® brand bottled water products nor did it even test any brands of "spring water," which, as discussed in Section I, *supra*, has regulated sourcing requirements.[4]  *See id*.  This methodology cannot "support general conclusions about the quality of" bottled spring water generally, let alone the Arrowhead® brand bottled spring water Bruno purchased. *Fahey*, 2018

---

[3] *See* Chris Tyree & Dan Morrison, *Plus Plastic: Microplastics Found in Global Bottled Water*, Orb Media (2018), *available at* https://orbmedia.org/plus-plastic-text (last visited Apr. 1, 2024) ("Bottled water output will soon hit 300 billion liters a year."), RJN Ex. 3.  The Court may consider Orb Media's website, as it is referenced in the complaint and central to Bruno's claims. *Janda v. T-Mobile USA, Inc*., 378 F. App'x 705, 707 (9th Cir. 2010).

[4] *See* Chris Tyree & Dan Morrison, *Plus Plastic:  Microplastics Found in Global Bottled Water* (2018), *available at* https://orbmedia.org/plus-plastic-data (last visited Apr. 1, 2024), RJN Ex. 4.

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

WL 5840664, at *3; *see also Otto v. Abbott Lab'ys, Inc.*, No. CV 12-1411, 2013 WL 12132064, at *6 (C.D. Cal. Mar. 15, 2013) (finding none of plaintiff's cited studies "are apposite as they fail to test the precise combination of ingredients in the Products"); *Murray v. Elations Co.*, No. 13-cv-02357, 2014 WL 3849911, at *7 (S.D. Cal. Aug. 4, 2014)  (dismissing UCL claim because plaintiff's "cited studies must have a bearing on the truthfulness of the actual representations made by Defendants").

*Second*, the same faulty temporal assumption exists.  Bruno "offer[s] no explanation for why" testing in 2018 "should tell us anything about the quality of" water he bought in 2022.  *See Fahey*, 2018 WL 5840664, at *3.  *Third*, Bruno's purchase lacks a geographic nexus with the Orb Study samples, which were not sourced in or near California, where Bruno presumably made his purchase.  *See* FAC ¶ 5.[5]  "[S]imply stating that the sales practices are the same in two different states during two different time periods without any factual support is insufficient." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014).  Allegations that water not labeled "spring water" bought in a handful of other locations showed "signs of microplastic contamination," FAC ¶ 13, cannot "plausibly suggest" spring water water sold in California did so too.  *Fahey*, 2018 WL 5840664, at *3; *accord Forsher v. J.M. Smucker Co.*, 612 F. Supp. 3d 714, 722 (N.D. Ohio 2020) (dismissing claims based on "generalized (and possibly outdated) statistics").

"To plead deception, it is incumbent on Plaintiff to allege facts that plausibly support the conclusion that the Product[] in fact" is deficient in the way he claims. *Otto*, 2013 WL 12132064, at *6.  Bruno's allegations do not meet the Rule 8 plausibility threshold, let alone the requirements of Rule 9(b).  Dismissal is warranted.

---

[5] Sherri A. Mason, Victoria Welch, Joseph Neratko; *Synthetic Polymer Contamination in Bottled Water*, Dep't of Geology & Environmental Sciences, State Univ. of New York Fredonia (2018), *available at* https://orbmedia.org/s/2018-03-13_FinalBottledWaterReport.pdf (last visited Apr. 1, 2024), RJN Ex. 5 (showing only United States source location was "Fredonia, NY").

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

### 2. The Words "100% Mountain Spring Water" Are Unlikely To Deceive A Reasonable Consumer

Bruno also fails to plead facts sufficient to establish that BTB labeled Arrowhead® brand bottled spring water with a claim that would deceive a reasonable consumer.  In the product labeling context, courts often evaluate FAL, UCL, and CLRA claims alleging fraudulent conduct together, as each law demands a plaintiff plausibly allege the challenged label statements are likely to deceive a "reasonable consumer." *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).  The "reasonable consumer" standard requires a plaintiff to show the defendant's representations about its product present "more than a mere possibility that [the seller's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  Bruno must establish "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (cleaned up).

Rule 9(b)'s heightened pleading standard applies to Bruno's FAL, UCL, and CLRA claims because they sound in fraud. *See, e.g., Vess,* 317 F.3d at 1103-04 (Rule 9(b) applies to state-law claims "grounded in fraud" or that "sound in fraud," including UCL, FAL, and CLRA claims).  Among other requirements, Rule 9(b) demands a plaintiff "set forth what is false or misleading about a statement, ***and why it is false.***" *Id.* at 1106 (cleaned up; emphasis added).

As BTB explained in its prior motion to dismiss, the only logical reading of "100% Mountain Spring Water" is as a representation that 100% of the water sold in the Arrowhead® brand bottle is *sourced* from mountain springs.  The claim references a *place*—that is, a "Mountain"—and a type of water, "Spring Water."  It says nothing about the chemical makeup or other properties of the water, and makes no representations about whether the water may contain traces of synthetic substances. *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044, 2011 WL 159380, at *6 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012)

("[S]tatements that the Drumsticks products are 'Classic' or 'Original,' without specific claims about content or ingredients, are generalized statements that would not mislead a reasonable consumer into thinking that these ice cream products are wholesome or healthy.").

Bruno tacitly concedes this point by insisting a reasonable consumer would read the words "Mountain Spring" out of "100% Mountain Spring Water" and interpret the label claim as promising a "'100%' water beverage" free of microplastics. FAC ¶¶ 20, 35, 42. Bruno's new theory falls short of the "reasonable consumer" standard in the same way his prior theory did. "[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore*, 4 F.4th at 882. "All the information" available to purchasers of Arrowhead® brand spring water includes the *complete* label claim—"100% Mountain Spring Water"—against the backdrop of a photo of a mountain spring placed on a plastic bottle, as shown below:



FAC ¶ 37. Reading such a label as a promise that the product contains nothing but hydrogen and oxygen is precisely the type of "unreasonable or fanciful interpretation" that cannot support a false advertising claim. *Moore*, 4 F.4th at 882.

Moreover, "information available to a consumer is not limited to the physical

label and may involve contextual inferences regarding the product itself and its packaging." *Id.*  As Bruno alleges, the presence of microplastics in aquatic environments has been "extensively documented" over the past several years. *See*, *e.g.*, FAC ¶¶ 11-14, 16-19.  From this context, the "reasonable consumer" purchasing naturally-sourced "spring water" would infer it may contain traces of microplastics. *See Moore*, 4 F.4th at 883 ("Although a reasonable consumer might not be an expert in honey production or beekeeping, consumers would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant."); *accord McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (reasonable consumers may consider "general knowledge about" the product).  The unreasonableness of Bruno's alleged belief that "mountain spring water" must be free of microplastics is further demonstrated by FDA's own recognition that bottled water may contain myriad "synthetic or artificial" substances and still be safe for human consumption and properly labeled as "spring water." *See* 21 C.F.R. § 165.110(b) (standards of quality for bottled water).

Bruno does not, and cannot, allege the Arrowhead® spring water he bought was not in fact sourced entirely (*i.e.*, 100%) from mountain springs and did not otherwise meet FDA's regulatory requirements.  The description of the water as "100% Mountain Spring Water" was true, and could not have misled a reasonable consumer.  Thus, his claims should be dismissed.

**C. To the Extent that Bruno Bases His Claims On Nondisclosure, They Fail**

While not entirely explicit in his FAC, Bruno appears to base his claims on an affirmative misrepresentation (i.e., the word "100%") and a non-disclosure (i.e., no warning about microplastics).  In the consumer protection context, "California courts have generally rejected a broad obligation to disclose." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  Instead, relying on *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006), "California federal courts have generally … [held] that a manufacturer's duty to consumers is limited to its warranty

- 13 -

1  obligations absent either an affirmative misrepresentation or a safety issue." *Id.*
2  (cleaned up).

3        As demonstrated above, "100% Mountain Spring Water" is not an actionable
4  or misleading representation when describing "spring water" sourced entirely from
5  mountain springs.  Thus, to proceed under a non-disclosure theory, Bruno must allege
6  in a specific and particularized manner the concealed matter—microplastics—
7  presents a safety concern.  *See Benavides v. Kellogg Co.,* No. CV 10-2294, 2011 WL
8  13269720, at *5 (C.D. Cal. Mar. 21, 2011) (dismissing CLRA claim based on non-
9  disclosure of potential food contamination where complaint did not include
10 particularized allegations of a safety threat).

11       Bruno fails to allege specific facts showing the alleged microplastic particles
12 threaten human safety.  The closest he comes are allegations that "exposure to
13 microplastics through ingestion can lead to gastrointestinal" and "cardiovascular
14 problems."  FAC ¶¶ 17-18.  But Bruno undermines his own theory by alleging
15 elsewhere in the FAC that the supporting "studies" he cites were performed on
16 "marine invertebrates," fish, and mice, and "the pathophysiological consequences of
17 acute and chronic exposure to microplastics in mammalian systems, ***particularly in***
18 ***humans***, are not yet fully understood."  *Id.* ¶ 16 (emphasis added).  Bruno therefore
19 does not plausibly allege a factual basis to conclude the unspecified microplastics
20 allegedly found in some bottled water pose a safety risk to consumers, because he
21 does not, and cannot, allege any human has actually suffered injury by ingesting
22 them.  Consequently, he cannot state a claim on a theory of non-disclosure.  *See, e.g.*,
23 *Daugherty,* 144 Cal. App. 4th at 835-36 (holding plaintiff "alleged no facts that
24 would establish [defendant] was 'bound to disclose' the defect" because "[t]he
25 complaint [was] devoid of factual allegations showing any instance of physical injury
26 or any safety concerns posed by the defect").

27       Additionally, to proceed under a non-disclosure theory, Bruno must plausibly
28 allege Arrowhead® contained microplastic particles in an amount BTB knew to be

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

harmful when Bruno made his purchase. *See, e.g.*, *Wilson,* 668 F.3d at 1145-46 (CLRA and UCL claims based on non-disclosure require "[p]laintiffs [to] show that HP was aware of the alleged defect at the time the Laptops were sold"); *Punian v. Gillette Co*., No. 14–cv–05028, 2015 WL 4967535, at *9-10 (N.D. Cal. Aug. 20, 2015) (plaintiff must plausibly allege defendant's knowledge of defect at the time of the sale to avoid dismissal of UCL and FAL claims, and allegation that "consumers [had] filed 'numerous complaints' [about the defect] with Defendants" did not do so). Bruno does not allege BTB knew of a potentially harmful level of microplastics in Arrowhead® brand bottled spring water when he purchased the product, or today.

### D. Bruno Fails To State A Claim Under The UCL's "Unfair" and "Unlawful" Prongs

Bruno similarly fails to state a claim under the "unfair" and "unlawful" prongs of the UCL. To state an "unfair" prong UCL claim, Bruno "must allege facts that Defendant's practice offends an established public policy or that the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Chong v. Nestlé Waters N. Am., Inc*., No. CV 19-10901, 2020 WL 7690175, at *9 (C.D. Cal. Nov. 30, 2020), *aff'd sub nom. Chong v. Nestlé Water N. Am., Inc*., No. 20-56373, 2021 WL 4938128 (9th Cir. Oct. 22, 2021). He does neither. As explained above, Arrowhead® brand bottled spring water is "not mislabeled or apt to mislead the reasonable consumer," because it is undisputedly sourced entirely from mountain springs and otherwise meets FDA's requirements for "spring water." *Id*. Moreover, where an "unfair prong claim overlaps entirely with [a] claim under the fraudulent prong" of the UCL, the unfair prong claim cannot survive if the fraudulent prong claim fails. *Sue Shin v. Campbell Soup Co*., No. CV 17-1082, 2017 WL 3534991, at *8 (C.D. Cal. Aug. 9, 2017). Because Bruno "does not suggest any other reason the Arrowhead [w]ater labeling would be immoral, unethical, or otherwise satisfy the requirements for a UCL unfair prong claim" beyond those that could not support his fraudulent prong claim, *Chong*, 2020 WL

- 15 -

7690175, at *9, his unfair prong claim should be dismissed.

To the extent Bruno bases his unlawful-prong claim on violations of the FDCA, it is impliedly preempted for the reasons discussed in Section IV.A, *supra. Shin*, 2017 WL 3534991, at *5. Because Bruno otherwise premises his "unlawful" claim on violations of the UCL, "it fails for the reasons already discussed." *Id.*

### E. Plaintiff Fails to Sufficiently Allege Reliance

Bruno's claims also fail because he does not plead reliance with specificity or that the label claim caused an alleged injury. *See Guzman v. Polaris Indus., Inc*., No. 8:19-cv-01543, 2020 WL 2477684, at *3-4 (C.D. Cal. Feb. 13, 2020) (discussing the "actual reliance" requirement).

Bruno's broad allegation that he "read and relied upon Defendant's '100% Mountain Spring Water' labeling to make his purchasing decision" because it "led [him] to believe that Defendant's Products would be superior in quality to other products that did not contain '100%' labeling," FAC ¶¶ 40, 43, falls short of Rule 9(b)'s heightened pleading requirement.  Courts in this district have held similar allegations—including that "[p]rior to purchasing the product, the plaintiff was exposed to, read, and relied upon the Misbranded Claims" and "[a]bsent the Misbranded Claims, plaintiff would not have purchased the product at all or would only have been willing to pay less" for it—are "too conclusory to satisfy the reliance requirement."  *Gumner v. PepsiCo, Inc*., No. SACV 23-00332, 2023 WL 9019040, at *4 (C.D. Cal. Aug. 3, 2023) (cleaned up); *see also Guzman*, 2020 WL 2477684, at *3 (dismissing UCL, FAL, and CLRA claims because an allegation that the sticker was "visible at the point of sale" cannot establish the plaintiffs read and relied on the sticker).  Like his original complaint, "[a]bsent from the [FAC] are any factual allegations concerning the circumstances of [Bruno's] purchase of the product," such as how he "intended to use the product," and whether he "consumed" it.  *Gomez v. Jelly Belly Candy Co*., No. EDCV 17-00575, 2017 WL 2598551, at *2 (C.D. Cal. June 8, 2017).  Bruno's "cursory, formulaic recitation is insufficient to state a

- 16 -

1    plausible claim for relief." *Id*.

2    **F. Bruno Fails to Allege Actual Injury and Damages**

3    Bruno's claims fail for another reason:  he does not plausibly allege injury or

4    damages.  "To properly plead an economic injury, a consumer must allege that she

5    was exposed to false information about the product purchased, which caused the

6    product to be sold at a higher price, and that she would not have purchased the goods

7    in question absent this misrepresentation." *Babaian v. Dunkin' Brands Grp., Inc.*,

8    No. LACV 17-4890, 2018 WL 11445614, at *7 (C.D. Cal. Feb. 16, 2018).  A

9    "hollow, conclusory assertion that" the disputed products are "worth less than what

10   the putative class members paid/pay for them" is insufficient.  *Id.*  Bruno's

11   unsupported allegations that he did not receive "the benefit of the bargain," FAC ¶

12   33, and "paid a price premium for a premium product, but instead received a non-

13   premium Product with Microplastics," *id.* ¶ 41, do not meet the standard.

14   In *Babaian v. Dunkin' Brands Group, Inc*., the court dismissed the plaintiff's

15   claim that he paid a price premium for donuts based on an allegation he "'bargained

16   for and paid for blueberry donuts and maple donuts' with real blueberries and maple

17   rather than artificial flavoring."  2018 WL 11445614, at *8.  It held the "factual

18   support for Plaintiff's allegation of a price premium is too tenuous for this Court to

19   accept" because he did not allege, for example, the donuts were priced higher than

20   the products of defendant's competitors.  *Id.*  The mere "allegation that real

21   ingredients are more expensive than artificial ingredients is insufficient to give rise

22   to these inferences of price-value differentials in the market." *Id.*

23   The same reasoning applies here.  Bruno's bare allegation that he paid more

24   for "premium" bottled spring water because he believed it did not contain

25   microplastics does not create an inference of a price-value differential in the market

26   for spring water.  Bruno's cursory allegation that Walmart's store-brand bottled

27   purified water currently costs less than Arrowhead® bottled spring water he bought

28   in 2022, FAC ¶¶ 38-39, does not help him.  To start, Bruno does not allege the price

- 17 -

of Great Value water in October 2022, but rather, the current price.  Regardless, Great Value brand purified water is an improper comparator, because Bruno does not, and cannot, allege it is sourced entirely from mountain springs like Arrowhead® brand spring water.  In fact, Walmart's Great Value bottled water is "purified water," which may be treated water sourced from a "community water system," *i.e.*, tap water.  *See* 21 C.F.R. § 165.110(a)(2)(iv) and (3)(ii).  Treated tap water is self-evidently incomparable to water sourced directly from mountain springs.  Thus, dismissal of Bruno's claims on this independent ground is also warranted.

### G. Alternatively, Bruno's Request For Injunctive Relief And Claims On Behalf Of Consumers Outside Of California Should Be Dismissed For Lack Of Standing

Bruno's prayer for injunctive relief should be dismissed because he lacks standing to pursue it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff seeking injunctive relief must allege a "real and immediate threat of repeated injury." *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019).  Thus, to have standing for injunctive relief, a consumer asserting false advertising claims must allege they want or intend to purchase the product again. *See, e.g.*, *id.*

BTB explained previously that Bruno cannot seek injunctive relief because he does not allege he wants or intends to purchase Arrowhead® brand bottled spring water again.  In response, Bruno now alleges he "desires to purchase truly 100% water beverages" and "will by [sic] unable to determine if Defendant's '100%' labeled products are actually 100% water" unless BTB is "forced to correct the fraudulent labeling or remove the microplastics."  FAC ¶¶ 35-36.  That is not enough.  In *Joslin*, the court rejected analogous allegation—that "if [plaintiffs] encounter the Products in the future, they cannot rely on the truthfulness of the Products' packaging"—because the plaintiffs did not "allege they want to or intend to purchase *the Products* in the future."  2019 WL 5690632, at *3 (emphasis added); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534, 2018 WL 6714323, at *4 (C.D. Cal.

- 18 -

Oct. 17, 2018) (dismissing request for injunctive relief in "complete absence of any allegations about Plaintiff's future intentions with regard to the Product" at issue). Here as well, Bruno alleges only a desire to purchase "100% water beverages" generally, not Arrowhead® brand bottled spring water specifically.

Further repleading cannot cure this defect. Bruno now knows the "100% Mountain Spring Water" label claim does not disclaim the presence of microplastics. Indeed, Bruno's allegations fundamentally rely on the premise that *all* bottled water contains microplastics, which may be harmful to human health. *See*, *e.g.*, FAC ¶¶ 13 (citing "global study on synthetic microplastic contamination in bottled water" generally), 14 (citing study of "the origin of bottled microplastics in drinking water" generally), 17-18 (citing alleged health effects). "The import of" these allegations is that BTB "can do nothing to alter its advertising or product to make" its bottled water "beneficial to" Bruno. *Anthony v. Pharmavite*, No. 18-CV-02636, 2019 WL 109446, at *6 (N.D. Cal. Jan. 4, 2019). Consequently, he has no basis to seek injunctive relief. *Id.*

Bruno similarly lacks standing to represent a nationwide class of Arrowhead® brand bottled spring water purchasers. *See* FAC ¶ 49. Bruno does not allege where he made his purchase, but because he alleges he "was at all relevant times residing in Los Angeles, California," *id*. ¶ 5, the only plausible inference is he made his purchase there. Because Bruno does not allege he made a purchase anywhere other than California, he lacks standing to represent purchasers outside of California. *See Young v. Mophie, Inc.*, No. SACV 19-827, 2019 WL 5173770, at *5 (C.D. Cal. Oct. 9, 2019) ("Because Plaintiffs are the sole class representatives and do not allege that they purchased Mophie's products anywhere other than California and Florida, they do not have standing to bring claims under the laws of other states.").

### H. Alternatively, Bruno's Complaint Should Be Dismissed Under the Primary Jurisdiction Doctrine

If the Court does not dismiss Bruno's claims on other grounds, dismissal is also warranted under the primary jurisdiction doctrine to allow FDA to determine whether "spring water" may contain microplastic particles. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Courts weigh four factors in determining whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc*., 307 F.3d 775, 781 (9th Cir. 2002).

FDA has the authority to and in fact does regulate bottled spring water contents and labeling. In a similar case involving "purified water," which FDA also regulates, another court in this district held that preemption barred the plaintiff's label claims and that the case should be dismissed based on FDA's primary jurisdiction. The court held that because "[t]he FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers … any claims regarding what concentration of microplastics might violate the FDA's regulations concerning ['spring water'] would implicate technical and policy claims better suited for decision by the FDA." *Baker*, 2019 WL 960204, at *3.

In the event this Court does not dismiss the FAC in its entirety on other grounds, it will be necessary to resolve technical issues best resolved on a uniform, nationwide basis by FDA, the agency with the requisite scientific expertise. Such issues include, for example: (1) whether microplastics at some level threaten human health; (2) if so, what level in bottled spring water is acceptable; (3) whether water FDA expressly requires be labeled as "spring water" may contain microplastics; and

BLUETRITON BRANDS, INC.'S
MOTION TO DISMISS

(4) whether bottled water manufacturers should have to test for and disclose on the label the presence of microplastics.

In *Baker*, the court held the primary jurisdiction doctrine applied for this exact reason in the context of the use of "purified water" on the label of bottled water. 2019 WL 960204, at *1-2. There, the plaintiff asserted claims under the FAL and UCL, alleging the use of the claims "pure" and "purified" on the label of bottled water was misleading because of the water's purported microplastics content. *Id*. The court applied the primary jurisdiction doctrine because "Congress has placed the issues raised in Plaintiff's complaint—the labeling of bottled water as pure or purified— squarely within the jurisdiction of the FDA and [they] depend on the FDA's expertise." *Id*.; *see also Tran v. Sioux Honey Ass'n Coop*., No. 8:17-cv-110, 2017 WL 5587276, at *2-3 (C.D. Cal. Oct. 11, 2017) (holding although the complaint was "ostensibly about the meaning of terms 'Pure' or '100% Pure,'" the complaint was really about what constitutes a safe level of a potential toxin, and therefore was better suited for decision by FDA).

The same regulations that govern the labeling of bottled water as "pure" or "purified" also govern the labeling of bottled water as "spring water." Thus, if the Court does not dismiss the FAC in its entirety, it should dismiss this action to allow FDA the opportunity to evaluate tolerance levels and labeling requirements relating to microplastics in bottled water, as did the court in *Baker*.

## V.    CONCLUSION

BTB respectfully requests the Court dismiss the FAC with prejudice.

Dated:  April 1, 2024                               WHITE & CASE LLP

                                                    By:  */s/ Bryan A. Merryman*
                                                          Bryan A. Merryman

                                                    Attorneys for Defendant
                                                    BLUETRITON BRANDS, INC.

1

## **CERTIFICATE OF SERVICE**

2      The undersigned, counsel of record for the defendant, certifies that this brief

3   contains 6,998 words, which complies with the word limit of L.R. 11-6.1.   The

4   undersigned also hereby certifies that a true and correct copy of the foregoing

5   document was filed in the Court's CM/ECF System this 1st day of April 2024, and

6   thereby served on all counsel of record.

7

8                                                 By:   */s/ Bryan A. Merryman*

9                                                       Bryan A. Merryman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -