**Todd M. Friedman (SBN 216752)**
**Adrian R. Bacon (SBN 280332)**
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
**21031 Ventura Blvd Suite 340**
**Woodland Hills, CA 91364**
**Phone: 323-306-4234**
**Fax: 866-633-0228**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**

*Attorneys for Plaintiff, and all others similarly situated*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PERRY BRUNO, individually, and on behalf of all others similarly situated**<br><br>Plaintiff,<br><br>v.<br><br>**BLUETRITON BRANDS, INC.,**<br><br>Defendant. | **Case No.: 2:24-cv-01563-MWF-JPR**<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

### TABLE OF CONTENTS

I.    INTRODUCTION                                              1

II.   STATEMENT OF FACTS                                        2

III.  LEGAL STANDARD                                            3

IV.   ARGUMENT                                                  4

      A.   PLAINTIFF'S CLAIMS ARE NOT PREEMPTED            4
      B.   DEFENDANT'S ARGUMENTS ARE INAPPROPRIATE

FOR A MOTION TO DISMISS.                                                6

C.   PLAINTIFF'S CLAIMS UNDER THE UCL'S UNLAWFUL
     AND UNFAIR PRONGS DO NOT FAIL                                      13

D.   PLAINTIFF HAS STANDING TO SUE FOR INJUNCTIVE RELIEF
                                                                       14

E.   DEFENDANT'S ATTEMPT TO DIMISS PLAINTIFF'S CLASS
     CLAIMS IS PREMATURE                                               17

F.   PLAINTIFF'S CLAIMS SHOULD NOT BE DISMISSED
     PURSUANT TO SUBJECT TO PRIMARY JURISDICTION                       19

G.   SHOULD THE COURT GRANT DEFENDANT'S MOTION
     TO DISMISS, PLAINTIFF SHOULD BE GIVEN THE
     OPPORTUNITY TO AMEND HIS COMPLAINT.                               21

V.   CONCLUSION                                                        21

# **TABLE OF AUTHORITIES**

**Cases**

*Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) . . . . . . . . . . . . . . . 15

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. Nestle S.A.,* No. 218CV03097VAPPJWX, 2019 WL 960204, at *2 (C.D. Cal. Jan. 3,
 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell v. Publix Super Markets, Inc.* 982 F.3d 468, 478 (7th Cir. 2020). . . . . . . . . . . . . . . 11

*Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cabral v. Supple, LLC, 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012) . . . . . . . . . 15

Campion v. Old Republic Home Prot. Co., Inc., 861 F. Supp. 2d 1139, 1150 (S.D. Cal.
 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Castagnola v. Hewlett-Packard Co., 2012 WL 2159385, *5 (N.D. Cal. June 13, 2012) . . . . 16

*Chen-Oster v. Goldman, Sachs & Co.*, 2012 U.S. Dist. LEXIS 12961 (S.D.N.Y. Jan. 19,
 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) . . . . 17

*Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *7 (S.D. Cal. June 11,
 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)), *cert.denied*, 139 S. Ct. 2636
 (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489, at *17-18
 (N.D. Cal. Dec. 22, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017). . . . . . . . . . . . . 15

*Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 811 (7th Cir. 2018) . . . . . . . . . . . . . . . . . . 4

*Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994) . . . 3

Harris v. Las Vegas Sands L.L.C., 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013) . . . . 15

Henderson v. Gruma Corp., 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) . . . . 14, 15

*Hibbs-Rines v. Seagate Techs., LLC*, 2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) 17

*I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) . . . . . . . . 17

*In Re Coca-Cola (II)*. *In Re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No II),* No. 20-15742, 2021 WL 3878654 (9ᵗʰ Cir. Aug. 31, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.,* 2014 WL 5311272, at \*10-11 (C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jones v. ConAgra Foods, Inc.,* 912 F.Supp.2d 889, 899 (N.D. Cal. 2012). . . . . . . . . . .  4,  10

*Jones v. Google LLC,* 73 F.4th 636, 642 (9th Cir. 2023); . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kang v. P.F. Chang's China Bistro, Inc.,* 844 F. App'x 969, 971–72 (9th Cir. 2021) . . . . . . 10

Koehler v. Litehouse, Inc., 2012 WL 6217635, at \*6 (N.D. Cal. Dec. 13, 2012) . . . . . . . . 14

*Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 321 (2011), . . . . . . . . . . . . . . . . . . . . . 13

Lanovaz v. Twinings N. Am., Inc., 2014 WL 46822, at \*10 (N.D. Cal. Jan. 6, 2014) . . . . . . 15

Larsen v. Trader Joe's Co., 2012 WL 5458396, at \*4 (N.D. Cal. June 14, 2012) . . . . . . . . 15

*Lyons v. Coxcom, Inc.,* 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) . . . . . . . . . . . . . 17

*N.L. Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986)  . . . . . . . . . . . . . . . . . .  3,  8

Nelsen v. King County, 895 F.2d 1248, 1252 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 16

*Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) . . . . . . . . . . .  3,  8

*Patriotic Veterans, Inc. v. Indiana,* 736 F.3d 1041, 1049 (7th Cir. 2013  . . . . . . . . . . . . . . 5

*Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal.App.4th 638, 645 (2008). . . . . . . . . . . 3

Ries v. Ariz. Bevs. USA LLC, 287 F.R.D. 523, 533 (N.D. Cal. 2012)  . . . . . . . . . . .  14,  15

*Rosado v. eBay Inc.,* Case No. 5:12–CV–04005–EJD, 2014 WL 2945774 (N.D. Cal. June 30, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . 8

*Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992  . . . . . . . . . . . . . . . 8

*Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008). . . . . . . . . . . . . .  3,  10

**Statutes**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Other Authorities**

iv

Fed. R. Civ. P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms;

    Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of

    Food, 58 Fed. Reg. 2302-01, 1993 WL 1540, at *2407 (Jan. 6 1993) . . . . . . . . . . . . . . 7

Now comes the Plaintiff, PERRY BRUNO, individually and on behalf of all others similarly situated, by and through his attorneys, and for his Memorandum in Opposition to Defendant's, BLUE TRITON BRANDS, INC., Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiffs hereby state as follows:

## I.   INTRODUCTION

Defendant intentionally labels its bottled water products with objectively false claims that the products are "100% Mountain Spring Water when in fact the products demonstrably contain microplastics. Defendant lied about important factors regular consumers use to evaluate the quality of the products they *put onto their bodies* for the express purpose of pushing their products with complete disregard for what consumers actually believe they are purchasing. These false claims are on the packaging, offered to equate Defendant's products to differentiate them from competitor's products which make no such claims at all. This amounts to fraud. Yet, Defendants ask this Court to rule that Plaintiff cannot state a claim upon which relief can be granted. Defendant is wrong.

Defendant argues that the First Amended Complaint ("FAC") should be dismissed because: (1) Plaintiff's claims are preempted; (2) Plaintiff failed to state a claim upon which relief may be granted; (3) Plaintiff's non-disclosure claims fail; (4) Plaintiff's claims under the UCL unlawful and unfair prongs fail; (5) Plaintiff ailed to allege reliance; (6) Plaintiff failed dot allege actual injury and damages; (7) Plaintiff's injunctive relief claims should be dismissed for lack of standing;  and (8) Plaintiff's claims should be dismissed under the primary jurisdiction doctrine.

Defendant's arguments fail, and they should be denied with prejudice. However, should the Court agree with some portion of Defendant's Motion, Plaintiff should be allowed an opportunity to amend his complaint to correct any perceived deficiencies.

## II.   STATEMENT OF FACTS

This case is brought on behalf of all purchasers of Defendant's Arrowhead products (the "Products") who purchased the Products in the United States between January 23, 2020 and the present. P. First Amended Comp. (Dkt. #11) ¶¶ 1, 9, 49-50.   Plaintiff alleges that Defendant's Products are advertised as being "100% Mountain Spring Water", when in fact the products contain Microplastics. *Id*. at ¶¶ 9.   Plaintiff alleges that Defendant knew its products contained microplastics, yet knowingly advertised them as "100% Mountain Spring Water" anyways, on Defendant's standard packaging. *Id*. at ¶ 47.

Plaintiff purchased one case of Defendant's Products in California. *Id.* at ¶ 28. Plaintiff did not know that the products contained microplastics at the time he purchased the products. *Id.* at ¶ 45. Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the products as "100% Mountain Spring Water" Plaintiff could not have known the Products contain microplastics. *Id.* at ¶¶ 31-35. Plaintiff and the members of the class and sub-classes were deceived into paying money for products that did not provide them with the benefit of the bargain they sought because Defendant lied to them about the contents of the products. *Id.* at 38-41.

Plaintiff alleges that the false advertisements that the products are "100% Mountain Spring Water" that are present on Defendant's products he purchased was substantively identical to the standardized packaging of products sold by Defendants to thousands of other class members, in California and the United States. *Id*. at ¶ 9. The allegations in this case do not arise from any oral or individualized interactions between class members and Defendant, but rather rely wholly on false affirmative misrepresentations made by Defendant on its standardized packaging. *Id*. at ¶ 9.

Plaintiff alleges that Defendant's mislabeling constitutes a violations of the California Unfair Competition Law (Cal. Business & Professions Code §§ 17500, *et seq*.), the California Unfair Competition Law (Cal. Business & Professions Code §§ 17200, *et seq.)*, and the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et*

*seq.*)  *Id.* at ¶ 1.  Plaintiffs allege that the claims at issue in this case will meet all elements required under Rule 23 for class certification.  *Id.* at ¶51-62.

## III.   LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint.  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  A complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief, and amendment would be futile. *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994).

To meet the pleading standard for fraud claims under the UCL, CLRA, FAL, and other consumer fraud statutes in the Ninth Circuit, a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Specifically, a plaintiff must allege that purported misrepresentations: (1) were relied on by plaintiff; (2) were material; (3) influenced plaintiff's decision to purchase defendant's product; and (4) were likely to deceive members of the public. *Rosado v. eBay Inc.*, Case No. 5:12–CV–04005–EJD, 2014 WL 2945774 at *6 (N.D. Cal. June 30, 2014).  The challenged conduct "is judged by the effect it would have on a reasonable consumer." *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 645 (2008).  "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings." *Williams*, 552 F.3d at 938–39.  Only in the rare case where a court can conclude as a matter of law that alleged misrepresentations are not likely to deceive a reasonable consumer, is it appropriate to dismiss claims under the UCL and FAL. *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (N.D. Cal. 2012).

## IV.   ARGUMENT

### A.   PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

Defendant's erroneous claim that 21 U.S. C. § 343-1 preempts Plaintiff's claims regarding its "100%" labeling should be denied with prejudice. The Supremacy Clause of the Constitution provides that the Constitution and federal laws constitute "the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Accordingly, the Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 811 (7th Cir. 2018) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)), *cert.denied*, 139 S. Ct. 2636 (2019).

Defendant argued Plaintiff's claims are expressly and impliedly preempted because their claims are different from the requirements of 21 CFR 165.110 (a)(2)(vi), and Plaintiffs' are suing solely to enforce the federal 'spring water' standard. Defendant's Mot. to Dismiss p. 5-6. Defendant is wrong. Conflict preemption arises when state law conflicts with federal law to the extent that the state law stands as an obstacle to the execution of Federal law. *Jones v. Google LLC,* 73 F.4th 636, 642 (9th Cir. 2023); *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013). In the case at bar, the federal and state misbranding laws include identical language characterizing when a food is misbranded. *See* 21 U.S.C. § 343(a)(1); *Ca. Health and Saf. Code § 110660.*

Therefore, compliance with both the federal and state misbranding laws cannot be impossible, and the state law cannot be an obstacle to the purposes and objectives of congress. *See Jones v. Google LLC,* 73 F.4th 636, 642 (9th Cir. 2023); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013). 21 CFR 165.110 (a)(2)(vi), explicitly states "[t]he name of water derived from an underground formation from which water flows naturally to the surface of the earth may be 'spring water.'" 21 CFR 165.110 (a)(2)(vi) does not define the term "100%" anywhere. The FDA does not have a binding policy on the term "100%". Therefore, "100%" is a voluntary label and is not required by 21 CFR 165.110 (a)(2)(vi). The Baker case is instructive on this issue. *Baker v. Nestle S.A.,* No. 218CV03097VAPPJWX, 2019 WL 960204, at *2 (C.D. Cal. Jan. 3, 2019). In *Baker,* the plaintiffs brought a putative class action against the defendant for misrepresenting that bottled water was "pure" when it contained microplastics.  *Baker* No. 218CV03097VAPPJWX, at 1. The *Baker* Court held that the Food and Drug Administration ("FDA") explicitly regulates the term "purified water", and as a result claims based on the term "purified water" are preempted. *Id* at 2.  To comply with the *Baker* plaintiffs' demands the defendant would need to stop using the term "pure" or "purified water" in conflict with 21 C.F.R. § 165.110(a)(2)(iv). However, in this case, complying with Plaintiff's demands would not require Defendant to change the "spring water" labeling, instead Defendant would have to stop voluntarily labeling the product as "100%" and would not conflict with 21 CFR 165.110 (a)(2)(vi). There is no conflict between

Defendant's compliance with 21 CFR 165.110 (a)(2)(vi) and compliance with *Ca. Health and Saf. Code § 110660* and the FAL or UCL. To the contrary, the FDCA prohibits misbranding of food, which occurs if the food's label is "false or misleading in any particular," and Plaintiff's state-law claims would also require Defendant to refrain from falsely or misleadingly label their products. See 21 U.S.C. § 343(a)(1); *Ca. Health and Saf. Code § 110660.* Plaintiffs are not suing to enforce the FDCA "spring water" standard, instead Plaintiffs are attempting to enforce state law claims regarding Defendant's use of "100%" labeling, which is misleading to reasonable consumers. Plaintiff's claims are not preempted.

**B.    DEFENDANTS' ARGUMENTS ARE INAPPROPRIATE FOR A MOTION TO DISMISS.**

Plaintiffs plausibly alleged factual content that allows the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). First, Plaintiffs identified the specific Products Plaintiffs allege were deceptively sold. First Amended Compl. ¶ 9. Second, Plaintiffs plausibly alleged that they were drawn to purchase the Products because of their "100%" labels. First Amended Compl. ¶ 40. Plaintiff explained how he, and any reasonable consumer, interprets the statement "100%" to mean the products they purchase will not contain synthetic materials. First Amended Compl. ¶¶ 25-27. Plaintiffs alleged that the microplastics in Defendant's Products are deleterious and the inclusion of microplastics in bottled water is a material concern

to consumers. First Amended Compl. ¶16-19.  Plaintiffs alleged that they were unaware of the Product's inclusion of microplastics at the time they purchased the Products and could not have known because of Defendant's misrepresentation. First Amended Compl. ¶ 45. Plaintiff's alleged that the Products they purchased contained microplastics despite being labeled as 100%. First Amended Compl ¶ 29. Plaintiffs alleged that they and the class have been deprived of the benefit of the bargain of their purchase because the Products contain microplastics when Defendant advertised the Products as 100%. First Amended Compl. ¶ 38-42. Plaintiff alleged that Defendant knew that the Products "100%" labeling was deceptive. First Amended Compl. ¶ 47. Finally, Plaintiffs alleged that they suffered an injury in fact as a result of Defendant's conduct. First Amended Compl. ¶ 38-42, 48.

Defendant's arguments ignore the well pled facts of the Complaint and assert issues of fact. First, Defendant asserted that Plaintiffs failed to plausibly allege that the Products he purchased contained microplastics.  Defendant's Mot. to Dismiss, at p. 8. That is false. Plaintiff explicitly alleged that his Products contained microplastics. First Amended Compl. ¶ 29. Defendant baselessly asserted that paragraph 29 of the complaint is a conclusion drawn from studies cited in the complaint, but that is a false assumption.  Plaintiff's allegations that his Products contain microplastics is a standalone factual allegation. The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be

drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). "A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Paragraph 29 of the Complaint does not reference any studies, but instead factually asserts that Plaintiff's Products actually contain microplastics. See First Amended Compl. ¶ 29. While Fed. R. Civ. P. 9(b) "does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992), citing *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992). Plaintiff's allegations show Defendant made the misrepresentation to Plaintiff, on October 19, 2022, at a Walmart in the Central District of California, by claiming the Product was 100% Mountain Spring Water when it contained microplastics, and this was communicated to Plaintiff through Defendant's label. See First Amended Compl. ¶ 28. Yet, Defendant asserts Plaintiff's allegations must be conclusory for a lack of information about testing performed on Plaintiff's products. The

investigation performed on Plaintiff's allegations is attorney work product. See *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393, 91 L. Ed. 451 (1947). Plaintiff is not required to include attorney work product in the pleadings. The test data of Plaintiff's Products is evidence. See Fed. R. Evid. 702(b). In other words, Defendant's entire argument on this issue is a demand for evidence in the pleadings. Defendant's argument is therefore inappropriate for a motion to dismiss.[1]

Second, Defendant argued that "100% Mountain Spring Water" is only reasonably interpreted as a reference to the water source. Defendant's Motion to Dismiss p. 10. Defendant bases these arguments on an assertion of fact that reasonable consumers would assume water would contain microplastics because of pollution in the environment. *Id.* Defendant argument fails for two reasons. First, Defendant's argument is a factual assertion about what "100% Mountain Spring Water" means to a reasonable consumer, which is an issue of fact inappropriate for a motion to dismiss. "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings." *Williams*, 552 F.3d at 938–39. Only in the rare case where a court can conclude as

---

[1] Defendant's argument is a disingenuous attempt to seek attorney work product, and places Plaintiff in a "heads I win, tails you lose" circumstance. Either Plaintiff includes attorney work product, breaching that protection and entitling Defendant to discover preliminary testing, consultation experts, and mental impressions, or, as Defendant has argued, his allegations must be conclusions. Plaintiff is entitled, through the discovery process, to hire an independent expert to independently confirm the investigation performed by Plaintiff's Counsel, and to present a report of the independent results.

a matter of law that alleged misrepresentations are not likely to deceive a reasonable consumer, is it appropriate to dismiss claims under the UCL and FAL. *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (N.D. Cal. 2012). Microplastics do not fit the description of allowed substances in 21 C.F.R. § 165.110(b). Microplastics are not chloride, iron, manganese, phenols, dissolved solids, or zinc, but instead are polypropylene, polyethylene, polyacetal, polystyrene, and other synthetic polymers. First Amended Compl. ¶ 16. There are no FDA approved levels of microplastics for human consumption. The FDA will never approve polypropylene, polyethylene, polyacetal, or polystyrene for human consumption. Furthermore, "100%" labeling is not defined by the FDA. So whether or not the inclusion of microplastics in a product labeled with voluntary "100%" labeling is misleading cannot be determined as a matter of law. Reasonable consumers cannot be expected to believe bottled water contains substances not approved for human consumption by the FDA by looking beyond the labeling of the Products to consider general pollution issues. See 21 C.F.R. § 165.110(b); *Kang v. P.F. Chang's China Bistro, Inc.,* 844 F. App'x 969, 971–72 (9th Cir. 2021). In *Kang* the 9th circuit has held that in light of the *Williams* case the use of the term "krab mix" could plausibly deceive reasonable consumers into believing that the products contained crab meat. *Kang* 9th Cir. 2021, at 972. The 9th Circuit concluded that Courts cannot assume that reasonable consumers would necessarily look past the term on the item they were purchasing to notice that contrary information existed elsewhere. See *Id. Bell*

*v. Publix Super Markets, Inc.* is informative on this point. 982 F.3d 468, 478 (7th Cir. 2020). In *Bell*, the plaintiff challenged the label "100% grated parmesan cheese" as deceptive where the ingredients label explicitly stated that the product contained other ingredients. *Bell,* 982 F.3d at 468-469. The Trial Court dismissed the claims on the basis that a reasonable consumer, using common sense, would scrutinize the packaging to determine that the product contained more than just cheese, such that "100% grated parmesan cheese" reasonably meant the cheese was "100% grated" not "100% cheese". *Id.* On appeal, the 7th Circuit reversed holding that, "what matters most is how real consumers understand and react to the advertising… [c]onsumer protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Id.* at 478. No reasonable person buys a "100%", much less any product of any kind made for human consumption, believing that the contents of the product will contain little bits of plastic from the product packaging or manufacturing process. See First Amended Compl. ¶ 24-27. Consumer protection statutes do not impose a duty on average reasonable consumers to parse Defendant's labels to determine if "100%" is a source statement or a content statement, or do look past the labeling on the Product for contrary information from other sources like general pollution concerns. See *Bell,* 982 F.3d at 478; *Kang* 9th Cir. 2021, at 972.

Third, Defendant argued that Plaintiff failed to make allegations necessary to

support a theory of non-disclosure of the microplastic contamination. Defendant's Mot. to Dismiss p. 13. Plaintiff has not based his claims on a non-disclosure theory, and has not made such allegations. However, Plaintiff reserves the right to raise non-disclosure claims at a later date as investigation continues into the facts of this litigation.

Forth, Defendant argues that Plaintiff failed to allege reliance. Defendant's Mot. to Dismiss p 16. That is false. Plaintiff explicitly alleged that he and the class purchased Defendant's Products because Defendant's advertising claimed that the Products were 100% Mountain Spring Water. First Amended Compl. ¶ 38-42. Plaintiff further explained how he interprets 100% labeling language to mean he is purchasing a superior quality product, and that he chose Defendant's Product over competing products because of the "100%" labeling. First Amended Compl. ¶ 38-42. Plaintiff's reliance allegations go beyond mere conclusions, and instead explain how Plaintiff actually considered the labeling in his purchasing decision. *Id.* Plaintiff has established that he read and relied upon the "100%" labeling when purchasing the Products. *Id.*

Fifth, Defendant argued that Plaintiffs failed to allege an injury and damages. Defendant's Mot. to Dismiss p. 17. That is false. The injury in fact requirement under the UCL and FAL are quite minimal.  In fact, all that is required is that a Plaintiff show that a person has "lost money or property" as a result of unfair practices. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 321 (2011), citing UCL

at § 17204. Plaintiffs explicitly pled that he was misled into purchasing products that did not provide him with the benefit of the bargain they paid money for, namely that Defendant's Products would be 100% Mountain Spring Water. First Amended Compl. ¶ 38-42. Plaintiff explicitly plead he suffered concrete and particularized injuries including **lost money**, wasted time, stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling. First Amended Compl. ¶ 48. (emphasis added). Plaintiff affirmatively alleged that he paid a premium price to receive a premium product, but instead received a product with microplastics in it. First Amended Compl. ¶ 38-42. Plaintiff explicitly pled that he purchased the Product from Walmart; Walmart sells Great Value brand water; Plaintiff forwent purchasing Great Value brand water for Defendant's Product; and Defendant's Product costs more than Great Value brand water. *Id*. Plaintiff pled that he willingly paid more money for Defendant's Products because of the "100%" labeling, which led him to believe that it was superior to the non-100% product. *Id*.

## C. PLAINTIFF'S CLAIMS UNDER THE UCL'S UNLAWFUL AND UNFAIR PRONGS DO NOT FAIL.

Defendant's entire argument regarding Plaintiff's claims under the UCL "unfair" prong explicitly relies on the Defendant's argument that Plaintiff's FAL claims fail, namely that "100%" labeling on the Products is not misleading. Defendant's Mot. to Dismiss at p. 15.  As explained above, Plaintiff's FAL claims do not fail because Plaintiff has adequately alleged a plausible claim of consumer deception. Defendant is asserting issues of fact inappropriate for a motion to dismiss. As a result, Plaintiff's UCL "unfair" claims do not fail for the same reasons.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, Defendant's arguments should be denied.

### D.   PLAINTIFF HAS STANDING FOR INJUNCTIVE RELIEF

To have Article III standing, Plaintiff must show that "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ries v. Ariz. Bevs. USA LLC,* 287 F.R.D. 523, 533 (N.D. Cal. 2012). As to these elements, the only dispute is whether or not Plaintiff has standing to seek injunctive relief. Specifically, Plaintiff must show that there is a threat of a similar injury in the future. *Id.*; *Henderson v. Gruma Corp.,* 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011).

The Ninth Circuit resolved a circuit split on this issue in ruling on *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017)*. See, In re 5-hour ENERGY Mktg. & Sales Practices Litig.,* 2014 WL 5311272, at *10-11 (C.D. Cal. 2014) (collecting cases and describing intra-circuit split). In fact, many California federal courts have concluded that plaintiffs have standing to seek injunctive relief even if they do not intend to purchase the same product again in the future. *See* e.g.*, Koehler v. Litehouse, Inc.,* 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) ("To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); accord *Lanovaz v. Twinings N. Am., Inc.,* 2014 WL 46822, at *10 (N.D. Cal. Jan. 6, 2014) (plaintiffs had standing even though they did not allege they would purchase the products again); *Harris v. Las Vegas Sands L.L.C.,* 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013) ("While a consumer must have been injured to have standing to bring a claim under a consumer protection statute in the first instance, a lead plaintiff need not allege that he will willingly subject himself to future misconduct, or that he will

be fooled by false advertising he now knows to be false, in order to seek injunctive relief on behalf of a class."); *Larsen v. Trader Joe's Co.,* 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) (plaintiffs had standing even though they would not purchase the products again); *Cabral v. Supple, LLC,* 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012) (same); *Ries v. Ariz. Bevs. USA LLC,* 287 F.R.D. 523, 533 (N.D. Cal. 2012) (same); *Henderson v. Gruma Corp.,* 2011 WL 1362188, at *2-3 (C.D. Cal. Apr. 11, 2011) (same).

The Ninth Circuit in Davidson, resolved the circuit split clearly, stating unequivocally "today, we resolve this district court split in favor of plaintiffs seeking injunctive relief. ***We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase***, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm…Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017)(emphasis added).

Following *Davidson*, the Ninth Circuit examined the requirements for alleging an imminent injury in a consumer products class action context in *In Re Coca-Cola (II)*. *In Re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No II),* No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021). Specifically, the Ninth Circuit held that none of the plaintiffs alleged a desire to purchase the Coke product as advertised, or any other fashion of a concrete, imminent injury. *In Re Coca-Cola (No II),* 2021 WL 3878654 at 2*.

Here, Plaintiff's situation is directly analogous to the position of the plaintiffs

in *Davidson*. Specifically, Plaintiff's knowledge of Defendant's current and past fraudulent labeling practices do not equate to knowledge that it will remain false in the future because microplastics are too small to identify by looking at the Products, and Plaintiff will be unable to determine if Defendant's Products contain microplastics if Defendant continues to label the Products as "100%" water. See First Amended Compl. ¶ 36. When Plaintiff sees Defendant's Products in the future, he will have no idea whether the product contains microplastics or not unless Defendant is forced to correct its fraudulent advertising by either removing the "100%" labeling or by removing the microplastics from their products. *Id.* Plaintiff alleged that desires to purchase truly "100%" water beverages and will be harmed if he cannot determine if Defendant's products are actually "100%" water. *Id.*

By way of contrast, the cases in which courts found a plaintiff to lack standing have been only where the record made clear that there is no plausible set of facts that would entitle the plaintiff to injunctive relief. See, e.g., *Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990) (describing "an extended chain of highly speculative contingencies, all of which would have to be fulfilled," before finding the threat of future harm to be too small to find standing for injunctive relief); *Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, *5 (N.D. Cal. June 13, 2012) (no plausible risk that plaintiff would be tricked again into enrolling into undesired third -- party service when purchasing a desired product); *Campion v. Old Republic Home Prot. Co., Inc.*, 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) (granting summary judgment where plaintiff had testified that he did not intend to purchase product again). None of these cases are applicable here, as Plaintiff provided clear allegations establishing imminent threat of harm to him and could amend to add more allegations of imminent harm if necessary.

**E.   DEFENDANT'S ATTEMPT TO DIMISS PLAINTIFF'S CLASS CLAIMS IS PREMATURE**

Defendant's argument in support of dismissing Plaintiff's claims on behalf of non-California consumers should be denied, as it prematurely seeks to resolve disputed factual issues about whether a nationwide class may be certified. In rejecting premature efforts to dismiss class allegations, courts have repeatedly recognized that where, as here, the factual issues critical to class certification are disputed, a court may not resolve the merits of plaintiffs' request for certification without the benefit of a developed record.[2]

Since the Supreme Court issued *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) courts have repeatedly denied premature requests to dismiss class allegations, recognizing that discovery is necessary to evaluate class claims. *See, e.g.*, *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489, at *17-18 (N.D. Cal. Dec. 22, 2011) (denying defendants' motion to dismiss wage and hour class claims as premature); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2012 U.S. Dist. LEXIS 12961, at *13-14 (S.D.N.Y. Jan.

---

[2] *See generally* 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3 ("As a practical matter, the court's [certification] determination usually should be predicated on more than the complaint itself affords.")  *See I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) (denying as premature a motion to strike class allegations based on Facebook's argument that allegations presented highly individualized facts); *Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations.  Accordingly, Defendants' Rule 12(b)(6) motion concerning Plaintiffs' class allegations is denied."); *Cholakyan*, 796 F. Supp. 2d at 1245-46 (rejecting motion to dismiss class allegations in advance of a motion for class certification as class allegations are disputed and require ample discovery); *Hibbs-Rines v. Seagate Techs., LLC*, No. C08-0540, 2009 U.S. Dist. LEXIS 19283, at *7-8 (N.D. Cal. Mar. 2, 2009) ("Discovery is integral to developing the shape and form of a class action and granting of motions to dismiss class allegations before discovery has commenced is rare'") (internal quotations and citations omitted); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) (denying motion to strike class allegations).

19, 2012) (denying motion to strike class allegations as premature in Title VII gender discrimination action); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *7 (S.D. Cal. June 11, 2012) ("To the extent that Hilton seeks to 'resolve class claims at the pleading stage, … however, its motion is improperly brought pursuant to Federal Rule of Civil Procedure 12(b)(6)."); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798 (3d ed. 2005) ("<u>Compliance with Rule 23  prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion.</u>") (Emphasis added.

Defendant seeks to prejudice the Plaintiff by denying him class discovery necessary for a properly supported motion for class certification, a motion that requires Plaintiff to put forward actual evidence that the prerequisites of Rule 23 are met.   To certify a class action, Plaintiffs must demonstrate that all of the prerequisites of Rule 23(a) are satisfied.   Cognizant of this burden, Defendant unfairly attempts to shift its burden to Plaintiffs prior to Plaintiffs' filing of a motion for class certification, thereby precluding the introduction of extrinsic evidence necessary to satisfy the prerequisites of Rule 23(a) and (b).   For this and other reasons, many courts have found a motion to dismiss class allegations prior to a motion for class certification is premature.   Accordingly, Defendant's Motion, to the extent it seeks a Court Order limiting the scope of Plaintiffs' class definition, is premature, and Plaintiffs should be permitted to conduct class discovery that is

1  necessary for their future motion for class certification.

2  **F.  PLAINTIFF'S CLAIMS SHOULD NOT BE DISMISSED UNDER PRIMARY JURISDICTION DOCTRINE**

3

4  To be subject to primary jurisdiction, a plaintiff's claims must contain issues

5  solely within an agency's special competency. *See Reiter v. Cooper*, 507 U.S. 258,

6  259 (1993). "[T]he doctrine of primary jurisdiction requires only that a court enable

7  'referral' to an administrative agency of a claim containing an issue within the

8  agency's special competence but does not deprive the court of jurisdiction." *Reiter*

9  *v. Cooper,* 507 U.S. 258, 259 (1993). Primary jurisdiction is properly invoked when

10  a claim is cognizable in federal court but requires resolution of an issue of first

11  impression, or of a particularly complicated issue that Congress has committed to a

12  regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166,

13  1172 (9th Cir.2002). *Syntek Semiconductor Co. v. Microchip Tech. Inc.,* 307 F.3d

14  775, 780 (9th Cir. 2002); *See Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*,

15  917 F.3d 538, 542 (7th Cir. 2019) (quoting *United States ex rel. Sheet Metal Workers*

16  *Int'l Ass'n, Local Union 20 v. Horning Investments, LLC*, 828 F.3d 587, 592 (7th

17  Cir. 2016). The FDA does not possess special competence in assessing whether

18  product labels are false and misleading. See *Slowinski v. Forces of Nature, Inc.,* No.

19  20 CV 2381, 2021 WL 1165099, at *4 (N.D. Ill. Mar. 26, 2021). Courts can, and do,

20  make these determinations regularly. *See Slowinski v. Forces of Nature, Inc.,* No. 20

21  CV 2381, 2021 WL 1165099, at *4 (N.D. Ill. Mar. 26, 2021); *City of Chicago v.*

22  *Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1065 (N.D. Ill. 2016) (holding that the

23  primary jurisdiction doctrine did not require the court to abstain from hearing a case

24  alleging that opioid manufacturers falsely marketed the risks, benefits, and

25  superiority of opioids); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL

26  1019794, at *16 (N.D. Ill. Mar. 15, 2016) ("The Court is well qualified to interpret

27  the regulations and to resolve matters regarding allegations of false and misleading

28  representations."); *Bruno v. Burt's Bees, Inc.,* No. LA CV 22-2306-SPG-KS, 2022

WL 17224716, at *1 (C.D. Cal. Aug. 25, 2022); *Noohi v. Kraft Heinz Co.,* No. CV1910658DSFSKX, 2020 WL 5554255, at *1 (C.D. Cal. July 20, 2020). Plaintiff seeks to enforce the requirements of 21 U.S.C. § 343(a)(1); *Ca. Health and Saf. Code § 110660*. California's consumer protection laws prohibits the use of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact in the state of California.  Furthermore, there are no determinations to be made about whether "spring water" may contain microplastics.  This Court does not need to determine anything regarding Defendant's "spring water" label, because this case is about whether or not Defendant's "100%" label is misleading to consumers. *Baker* supports not subjecting Plaintiff's claims to primary jurisdiction. *Baker v. Nestle S.A.,* No. 218CV03097VAPPJWX, 2019 WL 960204, at *2 (C.D. Cal. Jan. 3, 2019). In *Baker,* the court held the primary jurisdiction doctrine applied to the term "purified water" because the FDA has actually regulated that term, which is specifically defined by a regulation, 21 C.F.R. § 165.110(a)(2)(iv). *Baker v. Nestle S.A.,* No. 218CV03097VAPPJWX, 2019 WL 960204, at *2 (C.D. Cal. Jan. 3, 2019). There is no FDA regulation for the term "100%". Therefore, Plaintiff's claims are not subject to primary jurisdiction.

///

///


**G.    SHOULD THE COURT GRANT DEFENDANT'S MOTION TO DISMISS, PLAINTIFFS SHOULD BE GIVEN THE OPPORTUNITY TO AMEND THEIR COMPLAINT.**

Fed. R. Civ. P. 15(a)(2) states that "[t]he Court should freely give leave [to amend a pleading] when justice so requires." "Generally, Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003), quoting *Owens v. Kaiser Found. Health Plan, Inc.,* 244

F.3d 708, 712 (9th Cir. 2001). Should the Court feel that certain necessary allegations are lacking from Plaintiff's FAC and therefore grant Defendant's MTD, Plaintiff requests the Court grant him leave to file a Second Amended Complaint to correct any such deficiencies.

If the Court believes any deficiencies exist in Plaintiff's FAC, justice would require, as stated in Fed. R. Civ. P. 15(a)(2), that Plaintiff be granted leave to file a Second Amended Complaint, so that Defendant's alleged fraudulent conduct in the labeling of their products is not allowed to go unchecked. *See, e.g., Roney v. Miller* 705 Fed. Appx. 670 (9th Cir. 2017).

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with prejudice, order Defendant to file an Answer to Plaintiff's First Amended Complaint, and award such other relief as the Court deems appropriate under the circumstances. In the alternative, Plaintiff requests the Court grant him leave to file a Second Amended Complaint to correct any deficiencies in his First Amended Complaint.

Dated:  April 15, 2024            Respectfully submitted,

                                           LAW OFFICES OF TODD M. FRIEDMAN, P.C.

                                           By: /s/ Todd M. Friedman
                                               TODD M. FRIEDMAN, ESQ.
                                               Attorney for Plaintiff

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>PROOF OF SERVICE</u>

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On April 15, 2024, I electronically filed with the Court through its CM/ECF program and served a true copy through the same program the following documents: Plaintiff's Response to Defendant's Motion to Dismiss :

[x]     ELECTRONICALLY, Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

Place of Filing: 21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364.

Executed on April 15, 2024, at Woodland Hills, CA

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.


By: <u>s/ Todd M. Friedman</u>
     Todd M. Friedman