1   Bryan A. Merryman (SBN 134357)
2   bmerryman@whitecase.com
    WHITE & CASE LLP
3   555 S. Flower Street, Suite 2700
4   Los Angeles, CA  90071-2433
    Telephone: (213) 620-7700
5   Facsimile: (213) 452-2329

6   Attorneys for Defendant
    BLUETRITON BRANDS, INC.
7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12  PERRY BRUNO, individually, and on       Case No. 2:24-cv-01563 MWF (JPRx)
13  behalf of other members of the general
    public similarly situated,              **DEFENDANT BLUETRITON
14                                           BRANDS, INC.'S:**
15              Plaintiff,                   **(1) NOTICE OF MOTION AND
                                                 MOTION TO DISMISS SECOND
16       v.                                      AMENDED CLASS ACTION
                                                 COMPLAINT; AND**
17  BLUETRITON BRANDS, INC.,
18                                           **(2) MEMORANDUM OF POINTS
               Defendant.                        AND AUTHORITIES**
19
20                                           **[Request for Judicial Notice Filed
                                             Concurrently]**
21
                                             Date:  July 29, 2024
22                                           Time:  10:00 a.m.
                                             Courtroom: 5A
23                                           Judge:  Hon. Michael W. Fitzgerald
24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2       NOTICE IS HEREBY GIVEN that on July 29, 2024, at 10:00 a.m., or as soon

3 thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald,

4 Judge presiding, of the United States District Court for the Central District of

5 California, located at 350 West First Street, Courtroom 5A, Los Angeles, CA 90012,

6 defendant BlueTriton Brands, Inc. ("BTB") will move this Court to dismiss

7 plaintiff's second amended complaint ("SAC") with prejudice.

8       This motion is made, pursuant to Federal Rules of Civil Procedure 8, 9(b),

9 12(b)(1), and 12(b)(6), on the following grounds: (1) Sections 403A and 337(a) of

10 the federal Food, Drug, and Cosmetic Act expressly and impliedly preempt plaintiff's

11 claims; (2) the SAC fails to state a claim upon which relief may be granted; (3) the

12 SAC should be dismissed under the primary jurisdiction doctrine to allow FDA to

13 determine what concentration of microplastics might violate FDA's regulations

14 concerning "spring water" and consider technical and policy issues better suited for

15 decision by FDA; and (4) plaintiff lacks standing to seek injunctive relief and to

16 assert claims on behalf of consumers outside of California.

17       This motion is based on this notice of motion, the memorandum of points and

18 authorities, the request for judicial notice, the pleadings and documents on file, and

19 argument and other matters as may be presented to the Court at the hearing.

20       This motion is made following the conference of counsel pursuant to L.R. 7-3

21 which took place on June 6, 2024.

22

23 Dated:  June 18, 2024              WHITE & CASE LLP

24                            By:  */s/Bryan A. Merryman*

25                                Bryan A. Merryman

26                         Attorneys for Defendant
                        BLUETRITON BRANDS, INC.

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND .................................................................................3

III.  LEGAL STANDARD .........................................................................4

IV.   ARGUMENT .......................................................................................5

     A.    Bruno's Claims Are Preempted. ...............................................5

     B.    Bruno Fails to State a Claim Upon Which Relief May Be
          Granted .......................................................................................8

         1.    Bruno Fails to Allege the Products Were
             "Adulterated." .................................................................8

         2.    Bruno Fails to Plausibly Allege the Products He
             Purchased Contained the Substances He Identifies
             in the SAC. ....................................................................10

         3.    The Words "100% Mountain Spring Water" Are
             Unlikely to Deceive a Reasonable Consumer. ...............11

     C.    If Bruno Bases His Claims on Nondisclosure, They Fail .........15

     D.    Bruno Fails to State a Claim Under the UCL's "Unfair"
          and "Unlawful" Prongs .............................................................16

     E.    Plaintiff Fails to Allege Reliance .............................................17

     F.    Bruno Fails to Allege Actual Injury and Damages. .................18

     G.    Alternatively, Bruno Lacks Standing to Seek Injunctive
          Relief and Assert Claims on Behalf of Consumers
          Outside California .....................................................................19

     H.    Alternatively, Bruno's Complaint Should Be Dismissed
          Under the Primary Jurisdiction Doctrine ..................................20

V.    CONCLUSION ..................................................................................22

1

## **TABLE OF AUTHORITIES**

2

<u>**Page(s)**</u>

3

### **CASES**

4

*Anthony v. Country Life Mfg., L.L.C.*,

5

No. 02 C 1601, 2002 WL 31269621 (N.D. Ill. Oct. 9, 2002) ...............................7

6

*Anthony v. Pharmavite*,

7

No. 18-CV-02636, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ..........................20

8

*Ashcroft v. Iqbal*,

9

556 U.S. 662 (2009) .........................................................................................4

10

*Babaian v. Dunkin' Brands Grp., Inc.*,

No. LACV 17-4890, 2018 WL 11445614 (C.D. Cal. Feb. 16, 2018)................18

11

*Baker v. Nestlé S.A.*,

12

No. 2:18-cv-03097, 2019 WL 960204 (C.D. Cal. Jan. 3, 2019) ...................2, 21

13

*Benavides v. Kellogg Co.*,

14

No. 10-2294, 2011 WL 13269720 (C.D. Cal. March 21, 2011) ........................15

15

*Bubak v. Golo, LLC*,

16

No. 1:21-CV-00492, 2024 WL 86315 (E.D. Cal. Jan. 8, 2024) ..........................8

17

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,

18

No. C 10-01044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ..........................12

19

*Chacanaca v. Quaker Oats Co.*,

20

752 F. Supp. 2d 1111 (N.D. Cal. 2010)...............................................................6

21

*Chong v. Kind LLC*,

585 F. Supp. 3d 1215 (N.D. Cal. 2022)...............................................................6

22

*Chong v. Nestlé Water N. Am., Inc.*,

23

No. 20-56373, 2021 WL 4938128 (9th Cir. Oct. 22, 2021).........................16, 17

24

*Chong v. Nestlé Waters N. Am., Inc.*,

25

No. 19-10901, 2020 WL 7690175 (C.D. Cal. Nov. 30, 2020)...........................16

26

*Clark v. Time Warner Cable*,

27

523 F.3d 1110 (9th Cir. 2008) ..........................................................................20

28

- 2 -

*Collyer v. Catalina Snacks Inc.*,
No. 23-CV-00296-AMO, 2024 WL 202976 (N.D. Cal. Jan. 18, 2024) .......... 6, 8

*Cordes v. Boulder Brands USA, Inc.*,
No. CV 18-6534, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ...................... 19

*Daugherty v. American Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ...................................................................... 15, 16

*In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*,
No. 121CV269MSNJFA, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) .... 21, 22

*Gomez v. Jelly Belly Candy Co.*,
No. 17-00575, 2017 WL 2598551 (C.D. Cal. June 8, 2017) ...................... 17, 18

*Gumner v. PepsiCo, Inc.*,
No. SACV 23-00332, 2023 WL 9019040 (C.D. Cal. Aug. 3, 2023) ................ 17

*Guzman v. Polaris Indus., Inc.*,
No. 8:19-cv-01543, 2020 WL 2477684 (C.D. Cal. Feb. 13, 2020) ................. 17

*ImprimisRx, LLC v. OSRX, Inc.*,
No. 21-CV-01305, 2023 WL 2919318 (S.D. Cal. Apr. 12, 2023) ...................... 8

*Joslin v. Clif Bar & Co.*,
No. 4:18-cv-04941, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ................. 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 19

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ........................................................................ 14

*Merck & Co. v. Kidd*,
242 F.2d 592 (6th Cir. 1957) .......................................................................... 10

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .............................................................. 11, 12, 13, 14

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*,
48 F.4th 1040 (9th Cir. 2022) ......................................................................... 6, 7

*Organic Cannabis Found., LLC v. Commissioner*,
962 F.3d 1082 (9th Cir. 2020) ........................................................................... 3

- 3 -

*Otto v. Abbott Lab'ys, Inc.*,
　　No. CV 12-1411, 2013 WL 12132064 (C.D. Cal. Mar. 15, 2013) .................... 11

*Parks v. Ainsworth Pet Nutrition, LLC*,
　　377 F. Supp. 3d 241 (S.D.N.Y. 2019) ........................................................ 14

*Punian v. Gillette Co.*,
　　No. 14–05028, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) .......................... 16

*Richburg v. Conagra Brands, Inc.*,
　　No. 22-cv-2420, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) ........................ 2, 14

*Santiful v. Wegmans Food Markets, Inc.*,
　　No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ................................ 11

*Somers v. Apple, Inc.*,
　　729 F.3d 953 (9th Cir. 2013) .................................................................... 4

*Sue Shin v. Campbell Soup Co.*,
　　No. CV 17-1082, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ........................ 17

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
　　307 F.3d 775 (9th Cir. 2002) .................................................................... 20

*Tran v. Sioux Honey Ass'n, Coop.*,
　　No. 8:17-cv-110, 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017)........................ 22

*Turnipseed v. Simply Orange Juice Co.*,
　　No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ................................ 11

*Vess v. Ciba-Geigy Corp. USA*,
　　317 F.3d 1097 (9th Cir. 2003) ............................................................... 5, 12

*Wilson v. Hewlett-Packard Co.*,
　　668 F.3d 1136 (9th Cir. 2012) .............................................................. 15, 16

*Young v. Mophie, Inc.*,
　　No. SACV 19-827, 2019 WL 5173770 (C.D. Cal. Oct. 9, 2019) ...................... 20

## FEDERAL STATUTES

21 U.S.C.A. § 343(g) ...................................................................................... 3

21 U.S.C.A. § 346........................................................................................ 9, 10

21 U.S.C. § 337(a) ...................................................................................... 6, 7, 8

- 4 -

21 U.S.C. § 342(a)(1) ........................................................................................ 7, 9, 10

21 U.S.C. § 342(a)(3) ................................................................................................... 8

21 U.S.C. § 348(c)(1)(A) ............................................................................................. 9

**FEDERAL RULES**

Fed. R. Evid 201(b) ..................................................................................................... 3

Fed. R. Civ. P. 8 ......................................................................................................... 10

Fed. R. Civ. P. 9(b) ............................................................................... 4, 5, 10, 12, 17

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 4

**FEDERAL REGULATIONS**

21 C.F.R. § 165.110(a)(2)(iv), (a)(2)(vi) ............................................................. 3, 19

21 C.F.R. § 165.110(a)(3)(ii) .................................................................................... 19

21 C.F.R. § 165.110(b), (b)(4) ............................................................................. 3, 14

21 C.F.R. § 165.110(d) .......................................................................................... 7, 8

21 C.F.R. § 174.380 ..................................................................................................... 9

21 C.F.R. § 175.105(a)(2)(ii), (c)(5) .......................................................................... 9

21 C.F.R. § 175.300 ..................................................................................................... 9

21 C.F.R. § 177.1010 ................................................................................................... 9

21 C.F.R. § 177.1520 ................................................................................................... 9

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 8

Cal. Bus. & Prof. Code § 17500 ................................................................................. 8

Cal. Civ. Code § 1770(a) ............................................................................................. 8

Cal. Civ. Code § 1750 ................................................................................................. 8

- 5 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is plaintiff Perry Bruno's third attempt to state claims based on allegations that the words "100% Mountain Spring Water" on the label of Arrowhead® Brand Mountain Spring Water led him to believe it was free of "microplastics."  Bruno amended his initial complaint rather than opposing BTB's motion to dismiss.  This Court then dismissed Bruno's First Amended Complaint ("FAC") because the federal Food, Drug, and Cosmetic Act ("FDCA") preempts his claims, which sought to require BTB to "provide additional or different information" on the Arrowhead® label beyond what FDA regulations dictate.  ECF No. 5 ("Opinion") 4-5.  The Court granted Bruno "***one more chance*** to amend his complaint," noting its skepticism that he "can amend his allegations to avoid preemption."  *Id*. at 6 (emphasis in original).

Bruno's Second Amended Complaint ("SAC") confirms the Court's skepticism was well-founded.  Bruno alleges in the SAC that—***after*** filing his prior complaints—he engaged an "independent expert" to test whether the products he purchased were "contaminated with microplastics."  SAC ¶ 28.  He alleges that "five of the six bottles" tested positive for unspecified quantities of "microplastics identified as epoxy resin, rubber, polyvinyl chloride, polypropylene, polyarylamide, polyvinyl alcohol, and a styrene based thermoplastic elastomer."  *Id*. ¶ 29.  Bruno alleges that because the standard of identity for bottled water does not specify "allowed concentrations of" those substances, the product is "adulterated" with "filthy" substances under section 402(a)(1) of the FDCA.  *Id.* ¶ 32.  Bruno alleges BTB therefore has violated California's consumer protection laws, because the "100% Mountain Spring Water" label claim led consumers to believe Arrowhead® bottled spring water "would not be adulterated."  *Id.* ¶¶ 37-38.

Bruno's new theory fails to rescue his claims from FDCA preemption.  As the Ninth Circuit recently held, plaintiffs cannot use state consumer protection laws to end-run the FDCA's reservation of enforcement authority to the federal government.

- 1 -

BLUETRITON BRANDS, INC.'S MOTION TO DISMISS
CASE NO. 2:24-CV-01563-MWF (JPRx)

1    Because Bruno now expressly premises his consumer protection claims on violations

2    of FDA regulations promulgated under the FDCA, they remain preempted.

3         Preemption aside, Bruno's "adulterated with filthy substances" theory is

4    frivolous. FDA has ***expressly approved*** each alleged "microplastic" for use as a food

5    contact substance. By definition, a substance that FDA has expressly approved for

6    use in food contact materials cannot be "filthy." In addition, the FDCA excludes

7    approved food contact substances as "adulterants."

8         The SAC also suffers from the same pleading failures as the FAC. Bruno again

9    relies on a fanciful reading of "100% Mountain Spring Water," alleging he was

10    misled to believe the product was a "'100%' water beverage." As BTB explained

11    previously, Bruno's selective reading is implausible, because a reasonable consumer

12    would view the complete label claim in context, and conclude—accurately—that

13    100% of the water was sourced from mountain springs. Moreover, as another federal

14    court held recently, because FDA exempts "[s]ubstances migrating to food from

15    equipment or packaging" from disclosure on product labels, the absence of the

16    identified substances from the Arrowhead® label cannot be deceptive. *Richburg v.*

17    *Conagra Brands, Inc*., No. 22-cv-2420, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8,

18    2023).

19         Alternatively, Bruno's claims should be dismissed under the primary

20    jurisdiction doctrine. The regulation of the content and labeling of bottled water falls

21    within FDA's jurisdiction. Thus, FDA should determine whether spring water may

22    contain the alleged substances and in what amounts, as another court in this district

23    recently held in a similar context. *See Baker v. Nestlé S.A.*, No. 2:18-cv-03097, 2019

24    WL 960204 (C.D. Cal. Jan. 3, 2019).

25         The SAC shows that Bruno cannot correct his repeated pleading failures. The

26    Court should dismiss his claims with prejudice. *See* Opinion at 6 ("Any future

27    successful motion to dismiss will be granted without leave to amend.").

28

AMERICAS 126652331

## II.    BACKGROUND

BTB manufactures and distributes many unique bottled water products, including Arrowhead® Brand 100% Mountain Spring Water.  SAC ¶¶ 1, 8.  "The FDA protects consumers of bottled water through the [FDCA], which makes manufacturers responsible for producing safe, wholesome, and truthfully labeled food products."  U.S. Food & Drug Admin., *Bottled Water Everywhere: Keeping it Safe* (2022), *available at* https://www.fda.gov/consumers/consumer-updates/bottled-water-everywhere-keeping-it-safe (last visited June 18, 2024), RJN Ex. 1.[1]  BTB must comply with FDA regulations, known as "standards of identity," for products labeled "spring water."  The standard for "spring water" is, in relevant part:

> The name of water derived from an underground formation from which water flows naturally to the surface of the earth may be "spring water."  Spring water … shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth.

21 C.F.R. § 165.110(a)(2)(vi).  FDA also sets "standard of quality" regulations that limit the trace levels of common atmospheric contaminants in bottled water.  *See* 21 C.F.R. § 165.110(b)(4).

"Microplastics," or "plastic particles ranging in size from 5 mm to 1 nm … have been found in every ecosystem on the planet from the Antarctic tundra to tropical coral reefs."  U.S. Environmental Protection Agency, *Microplastics Research*, *available at* https://www.epa.gov/water-research/microplastics-research (last visited June 18, 2024), RJN Ex. 2.  FDA does not require bottled water manufacturers to disclose, or test for, the presence of microplastics.  *See* 21 U.S.C.A. § 343(g); 21 C.F.R. § 165.110(a)(2)(vi).

Bruno alleges that on October 19, 2022, he bought a six-pack of Arrowhead® brand bottled water labeled "100% Mountain Spring Water" from a Walmart in an

---

[1] The Court may take judicial notice of government websites under Federal Rule of Evidence 201(b).  *Organic Cannabis Found., LLC v. Commissioner*, 962 F.3d 1082, 1096 (9th Cir. 2020).

AMERICAS 126652331

unidentified location.  SAC ¶¶ 27, 47-48.  Bruno does not allege whether he consumed or otherwise used the water.  He also does not, and cannot, allege the water was not "derived from an underground formation from which water flows naturally to the surface of the earth," or that it lacked "all the physical properties" and "the same composition and quality" as such water.  Nor does Bruno allege the water he purchased violated applicable standards of quality.  Rather, he alleges that Fourier Transform Infrared Spectroscopy ("FITR") microscopy testing conducted in April 2024—a year and a half after his purchase, and several months after he filed this lawsuit—detected unspecified amounts of epoxy resin, rubber, polyvinyl chloride, polypropylene, polyarylamide, polyvinyl alcohol, and a styrene based thermoplastic elastomer in some bottles.  *Id.* ¶ 29.  On this basis, Bruno alleges he suffered injury by paying a premium for "100% Mountain Spring Water" that was "adulterated" with "filthy substances."  *Id.* ¶¶ 38-46.

Bruno asserts three claims for relief:  for violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*  SAC ¶¶ 73-103.  Bruno seeks to certify a nationwide class and a California subclass.  *Id.* ¶¶ 49-50.

### III.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts must disregard legal conclusions, even when disguised as facts.  *See id.* at 681.

Rule 9(b) governs fraud-based allegations.  It "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough

1    to give defendants notice of the particular misconduct so that they can defend against

2    the charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

3    (cleaned up).

4    **IV.    ARGUMENT**

5        Bruno's claims should be dismissed on several grounds.  To begin, the FDCA

6    preempts them, because Bruno may not enforce the FDCA's prohibition on the sale

7    of adulterated food products.

8        Bruno also fails to allege the elements of his claims with the particularity Rule

9    9(b) requires.  *First*, he fails to allege the Products are "adulterated" or contain

10    material amounts of the seven substances.  *Second*, Bruno fails to plead a reasonable

11    consumer is likely to be deceived, because no reasonable consumer would interpret

12    the claim about the *source* of "100% Mountain Spring Water" to guarantee the

13    absence of microplastics.  *Third*, Bruno fails to plead a nondisclosure-based claim

14    under the FAL, UCL, or CLRA, because he alleges no factual support for the

15    conclusion that microplastics in bottled water threaten consumer safety.  *Fourth*, for

16    the same reasons, Bruno fails to state a claim under the "unfair" or "unlawful" prongs

17    of the UCL.  *Fifth*, Bruno fails to allege reliance with specificity.  *Sixth*, Bruno fails

18    to allege he suffered injury because of the challenged conduct.

19        In addition, Bruno lacks standing to seek injunctive relief or represent

20    purchasers outside California, because he alleges no real and immediate threat of

21    repeated injury, or injury in other states.  Dismissal is also warranted under the

22    primary jurisdiction doctrine to allow FDA to consider technical and policy issues

23    involving microplastics in "spring water."

24    **A. Bruno's Claims Are Preempted.**

25        This Court correctly held that the FDCA preempted Bruno's claims in the FAC

26    because they sought to require BTB to "provide additional or different information"

27    about microplastics on the Arrowhead® label beyond what FDA regulations dictate.

28    Opinion at 5.  To try to avoid this holding, Bruno takes a different, equally futile tack

- 5 -

1    in the SAC.  Bruno now alleges microplastics are "filthy" substances, and thus their

2    purported presence in Arrowhead® bottled spring water renders the product

3    "adulterated" in violation of its standard of identity.  SAC ¶ 32.

4           Bruno's new theory violates Section 337(a) of the FDCA, which provides that

5    actions to "enforce[], or to restrain" FDCA violations "shall be by and in the name

6    of the United States."  21 U.S.C. § 337(a).  "Because the FDCA forbids private rights

7    of action under that statute, a private action brought under [other laws] may not be

8    pursued when, as here, the claim would require litigation of the alleged underlying

9    FDCA violation in a circumstance where the FDA has not itself concluded that there

10    was such a violation."  *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs.,*

11    *Inc*., 48 F.4th 1040, 1048 (9th Cir. 2022).  Stated otherwise, "while the FDCA does

12    not preempt preexisting state common-law duties that parallel federal requirements,

13    it does preempt state-law claims that ultimately are dependent on the existence of

14    violations of federal law."  *Collyer v. Catalina Snacks Inc*., No. 23-CV-00296-AMO,

15    2024 WL 202976, at *6 (N.D. Cal. Jan. 18, 2024); *accord Chong v. Kind LLC*, 585

16    F. Supp. 3d 1215, 1219 (N.D. Cal. 2022) (same).[2]

17           Because Bruno's claims now depend entirely on alleged violations of the

18    standard of identity for bottled water, they fall squarely within the FDCA's bar on

19    private enforcement.  Bruno alleges the water he purchased is "not '100%' Water"

20    because it is "contaminated with microplastics"—specifically, "epoxy resin, rubber,

21    polyvinyl chloride, polypropylene, polyarylamide, polyvinyl alcohol, and a styrene

22    based thermoplastic elastomer."  SAC ¶ 29.  Bruno asserts these substances are

23    "filthy" under section 402(a)(3) of the FDCA, and therefore Arrowhead® spring

24

25    [2] "A district court split has developed … over whether plaintiffs can state a UCL
claim by relying on an averred violation of California's Sherman Law."  *Collyer*,

26    2024 WL 202976, at *5.  Bruno ***only*** asserts a violation of the FDCA, and does not
rely on (or even cite) the Sherman Law.  If the court held otherwise in *Chacanaca v.*

27    *Quaker Oats Co*. 752 F. Supp. 2d 1111 (N.D. Cal. 2010), that conflicts with the Ninth
Circuit's subsequent holding in *Nexus* that section 337(a) bars claims expressly based

28    on FDCA violations.  *See Nexus Pharms*, 48 F.4th at 1048.

water is "adulterated" under 21 C.F.R. § 165.110(d).  *Id.* ¶¶ 32-34.  Thus, Bruno alleges, BTB has violated California's consumer protection laws, because "[r]easonable consumers do not expect Products labeled as '100%' will be adulterated with filthy substances," and Bruno "believed based on Defendant's labeling that the Products would not be adulterated."  SAC ¶¶ 38-39.

Bruno cannot avoid the FDCA's bar on private enforcement by cloaking his claims in the language of false advertising.  Claims based on allegations that the "100% Mountain Spring Water" label deceived consumers into buying adulterated water, without causing physical injury, do not resemble a "traditional common law tort."  *Nexus Pharms., Inc.*, 48 F.4th at 1050 (distinguishing preempted claim that "rel[ied] on noncompliance with FDA requirements" from non-preempted claims "made by patients injured by defective medical devices").  Because Bruno does not allege he was physically injured after consuming water that purportedly did not meet federal standards, his claims are "unmistakably one[s] for direct enforcement of the FDCA."  *See Anthony v. Country Life Mfg., L.L.C.*, No. 02 C 1601, 2002 WL 31269621, at *3 (N.D. Ill. Oct. 9, 2002) (claim by uninjured plaintiff that manufacturer violated Illinois consumer protection law by "knowingly plac[ing] 'adulterated' bars into the stream of commerce" preempted), *aff'd sub nom. Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379 (7th Cir. 2003).

The FDCA also makes clear that FDA alone is empowered to ensure food safety by regulating the presence of unavoidable substances (like microplastics) in food and beverages.  21 U.S.C. §§ 337(a), 342(a), 346.  Allowing Bruno's claims to proceed risks creating inconsistency with FDA regulations—or with its deliberate decision not to act on risks it deems acceptable.  *See* Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592-01, 28615 (June 21, 1991) ("FDA is unwilling to require a warning statement in the absence of clear evidence of a hazard….").

Accordingly, because Bruno's claims "ultimately are dependent on the existence of violations of federal law" that only the United States may enforce,

1  Section 337(a) of the FDCA preempts them.  *Collyer*, 2024 WL 202976, at *6.[3]

2  Bruno appears to have abandoned his prior theory that BTB deceived

3  consumers by failing to disclose that spring water otherwise meeting the standard of

4  identity may contain microplastics.  If he continues to advance claims based on that

5  theory, Section 403A preempts them for the reason this Court explained—*i.e.*, such

6  claims would seek to "impose obligations that go beyond those provided in the

7  FDCA."  *See* Opinion at 5-6 (citing 21 U.S.C. § 343-1(a)(5); 21 C.F.R. § 100.1(c)(4)).

8  **B. Bruno Fails to State a Claim Upon Which Relief May Be**
9  **Granted.**

10  In any event, Bruno fails to state a claim.  The UCL prohibits "any unlawful,

11  unfair or fraudulent business act or practice and unfair, deceptive, untrue or

12  misleading advertising ..."  Cal. Bus. & Prof. Code § 17200.  The FAL renders it

13  "unlawful for any person … with intent directly or indirectly … to make or

14  disseminate … any statement, concerning … real or personal property … which is

15  untrue or misleading, and which is known, or which by the exercise of reasonable

16  care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

17  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

18  practices."  Cal. Civ. Code § 1770(a).  Bruno does not, and cannot, allege BTB

19  engaged in fraudulent, unfair, or unlawful conduct.

20  **1. Bruno Fails to Allege the Products Were "Adulterated."**

21  As explained above, Bruno now premises his claims on allegations that the

22  "100% Mountain Spring Water" label claim is deceptive because products he

23  purchased were "adulterated" with purportedly "filthy" substances.  *See* 21 U.S.C.

24  § 342(a)(3); 21 C.F.R. § 165.110(d).  Section 402(a) of the FDCA expressly exempts

[3] *Accord ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305, 2023 WL 2919318, at *4 (S.D. Cal. Apr. 12, 2023) ("[I]f an FDCA violation is integral to Plaintiff's UCL claim, then the FDCA's prohibition on private enforcement preempts the claim"); *Bubak v. Golo, LLC*, No. 1:21-CV-00492, 2024 WL 86315, at *4 (E.D. Cal. Jan. 8, 2024) (claims that "say[] in substance 'comply with the FDCA'" are "impliedly preempted and barred by the FDCA's bar against private enforcement").

any substance that is "not an added substance" from the definition of "adulterated food" if "the quantity of such substance in such food does not ordinarily render it injurious to health." 21 U.S.C. § 342(a)(1).  The FDCA also provides that where a "poisonous or deleterious substance … cannot be avoided by good manufacturing practice," FDA may "promulgate regulations limiting the quantity therein," and "such food shall not, by reason of bearing or containing any added amount of such substance, be considered to be adulterated." 21 U.S.C.A. § 346.  FDA also signals its approval of food contact substances by promulgating regulations describing the conditions of their safe use.  *See* 21 U.S.C. § 348(c)(1)(A).

Bruno does not—and cannot—allege BTB added any of the alleged substances to Arrowhead® bottled spring water.  And FDA has expressly approved ***each one*** as a food contact substance in various applications.[4]  Bruno also does not allege the amount of each substance purportedly detected, or that any specifically causes human

---

[4] *See, e.g.*, 21 C.F.R. § 175.105(a)(2)(ii), (c)(5) (approving polypropylene, polyamide, polyacrylamide, polyvinyl alcohol, vinyl chloride polymer (another name FDA uses for polyvinyle chloride), and various forms of rubber and styrene as safe adhesives for packaging, transporting, or holding aqueous foods); 21 C.F.R. § 175.300 ("[r]esinous and polymeric coatings may be safely used as the food-contact surface of articles intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food," and listing epoxy resin, polypropylene, polyamide, polyvinyl alcohol, polyvinyle chloride, various forms of rubber and styrene as safe adhesives); 21 C.F.R. § 174.380 (approving epoxy resin as a "food-contact coating for articles intended for use in contact with food"); 21 C.F.R. § 177.1010 (vinyl chloride is an "acrylic and modified acrylic polymer[] or plastic[] … [that] may be safely used as components of articles intended for use in contact with food"); 21 C.F.R. § 177.1520 (polypropylene "may be safely used as [an] article[] or component[] of articles intended for use in contact with food").

It is unclear what Bruno means by "polyarylamide."  *See* SAC ¶ 29.  It may be a typing error for the more common FDA-approved substances "polyacrylamide" or "polyamide."  If Bruno means the proprietary polymer resin marketed as "Ixef® polyarylamide" or "PARA," FDA also has approved that substance in at least one food-contact application.  *See* Solvay, *Solvay's Ixef® PARA Receives Regulatory Approval for Drinking Water Use* (Apr. 23, 2014), *available at* https://www.solvay.com/sites/g/files/srpend221/files/tridion/documents/Ixef_PARA_Approved_for_Drinking_Water_Applications_Final_EN.pdf (last visited June 18, 2024), RJN Ex. 3; U.S. Food & Drug Admin., Inventory of Effective Food Contact Substance (FCS) Notifications, FCN No. 1242, *available at* https://www.cfsanappsexternal.fda.gov/scripts/fdcc/index.cfm?set=FCN&id=1242 (last visited June 18, 2024), RJN Ex. 4.

- 9 -

injury.  Thus, there is no factual basis to conclude the products Bruno purchased contained a non-added substance in an amount "injurious to health."  21 U.S.C. § 342(a)(1).  Even if Bruno had alleged the presence of food contact substances in excess of their tolerance levels, a food "bearing or containing *any* added amount of such substance" shall not "be considered adulterated within the meaning of" section 402(a)(1).  21 U.S.C. § 346 (emphasis added).  Accordingly, even if not preempted, Bruno's claims fail because approved food contact substances are not adulterants.  21 U.S.C. §§ 342(a), 346.

Bruno also has not established, and cannot establish, that the products are "adulterated" with "filthy" substances.  FDCA § 402(a)(3), 21 U.S.C. § 342(a)(3).  "The federal courts have held that the word 'filthy' is intended to be given its ordinary meaning," and "should not be expanded beyond its accepted connotation in ordinary English speech."  *Merck & Co. v. Kidd*, 242 F.2d 592, 595 (6th Cir. 1957)[5] (collecting cases).  The accepted, ordinary meaning of "filthy" does not include substances FDA has *expressly approved as safe for use in food contact applications*.

Accordingly, Bruno's UCL, FAL, and CLRA claims should be dismissed.

### 2. Bruno Fails to Plausibly Allege the Products He Purchased Contained the Substances He Identifies in the SAC.

Bruno's claims independently fail because his vague allegations do not satisfy the Rule 8 plausibility threshold, let alone Rule 9(b)'s pleading standard for fraud claims.  Bruno alleges that in April 2024—a year and a half after his purchase, and after filing two prior complaints—he engaged an unidentified "independent expert" to conduct FITR microscopy to test whether the products he purchased were "contaminated with microplastics."  SAC ¶ 28.  Bruno alleges "five of the six bottles" tested positive for unspecified quantities of seven substances.  SAC ¶ 29.

---

[5] In *Kidd*, the Sixth Circuit interpreted the analogous provisions of the Tennessee Food, Drug, and Cosmetic Act, which "is patterned upon the" FDCA, and cited FDCA cases in support of its holding that an imperceptible virus was "not a filthy substance within the intendment of" that statute.  *Id*. at 594-96.

- 10 -

1    "To plead deception, it is incumbent on Plaintiff to allege facts that plausibly
2    support the conclusion that the Product[] in fact" is deficient in the way he claims.
3    *Otto v. Abbott Lab'ys, Inc*., No. CV 12-1411, 2013 WL 12132064, at *6 (C.D. Cal.
4    Mar. 15, 2013).  In an analogous case, a federal court held the plaintiff failed to state
5    mislabeling claims based on "laboratory testing of the Product" where the plaintiff
6    "failed to provide details about the testing, including "the testing methodology
7    followed, the specific date, time, or place of the testing, who conducted the testing,
8    the qualifications of the testers, etc." *Turnipseed v. Simply Orange Juice Co*., No.
9    20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022); *see also Santiful v.*
10   *Wegmans Food Markets, Inc*., No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan.
11   28, 2022) (mislabeling claims lacked sufficient details about "the testing
12   methodology, the date, time, or place of the testing, who conducted the testing, and
13   what the exact product tested was").

14          Bruno similarly fails to allege basic details about the testing he relies on,
15   including where it occured or the identity and qualifications of his "independent
16   expert."  *See* SAC ¶¶ 28-29.  Nor does Bruno identify which substances were
17   purportedly found in which bottles, or in what quantity.  *See id*.  Thus, there is no
18   basis to infer the amount of any substance would have been material to a reasonable
19   consumer.  The only plausible inference from Bruno's allegations is that the alleged
20   testing detected *de minimis* traces of FDA-approved food contact substances.  These
21   reasons also warrant dismissal.

22          ### 3.  The Words "100% Mountain Spring Water" Are Unlikely to
23          Deceive a Reasonable Consumer.

24          Bruno also fails to plead facts sufficient to establish BTB labeled Arrowhead®
25   bottled spring water with a claim that would deceive a reasonable consumer.  In the
26   product labeling context, courts often evaluate FAL, UCL, and CLRA claims
27   alleging fraudulent conduct together, as each law demands plausible allegations that
28   the challenged statements are likely to deceive a "reasonable consumer."  *See Moore*

- 11 -

1    *v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).  The "reasonable consumer"

2    standard requires a plaintiff to show the defendant's representations present "more

3    than a mere possibility that [the seller's] label might conceivably be misunderstood

4    by some few consumers viewing it in an unreasonable manner." *Id.*  Bruno therefore

5    must establish "a probability that a significant portion of the general consuming

6    public or of targeted consumers, acting reasonably in the circumstances, could be

7    misled."  *Id.* (cleaned up).

8          Rule 9(b)'s heightened pleading standard applies to Bruno's FAL, UCL, and

9    CLRA claims because they sound in fraud.  *See, e.g.*, *Vess*, 317 F.3d at 1103-04.

10    Among other requirements, Rule 9(b) demands a plaintiff "set forth what is false or

11    misleading about a statement, ***and why it is false.***" *Id.* at 1106 (cleaned up; emphasis

12    added).

13          As BTB previously explained, the only logical reading of "100% Mountain

14    Spring Water" is as a representation that 100% of the water sold in the Arrowhead®

15    brand bottle is *sourced* from mountain springs.  The claim references a *place*—a

16    "mountain"—and a type of water, "spring water."  It says nothing about the chemical

17    makeup or other properties of the water, or whether it may contain traces of

18    microplastics.  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044, 2011

19    WL 159380, at *6 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012)

20    ("[S]tatements that the Drumsticks products are 'Classic' or 'Original,' without

21    specific claims about content or ingredients, are generalized statements that would

22    not mislead a reasonable consumer into thinking that these ice cream products are

23    wholesome or healthy.").

24

25

26

27

28

1    Bruno tacitly concedes this point by insisting a reasonable consumer would

2  ignore the words "Mountain Spring," and interpret the label as promising a "'100%'

3  water beverage" that was not "adulterated" with microplastics.  SAC ¶¶ 21, 37, 47.

4  Bruno's selective reading of the label claim falls short of the "reasonable consumer"

5  standard.    "[D]eceptive  advertising  claims  should  take  into  account  all  the

6  information available to consumers and the context in which that information is

7  provided and used."  *Moore*, 4 F.4th at 882.  "All the information" available to

8  Arrowhead® spring water purchasers includes the *complete* label claim—"100%

9  Mountain Spring Water"—against the backdrop of a photo of a mountain spring

10  placed on a plastic bottle:



21  SAC ¶ 47.  Reading the label as a promise that the product contains just hydrogen

22  and oxygen is precisely the type of "unreasonable or fanciful interpretation" that

23  cannot support a false advertising claim.  *Moore*, 4 F.4th at 882.

24    Moreover, "information available to a consumer is not limited to the physical

25  label and may involve contextual inferences regarding the product itself and its

26  packaging."    *Id*.    As Bruno alleges, the presence of microplastics in aquatic

27  environments has been "extensively documented."  *See*, *e.g*., SAC ¶¶ 11-14.  Thus,

28  the "reasonable consumer" purchasing naturally-sourced "spring water" would infer

- 13 -

it may contain traces of microplastics. *See Moore*, 4 F.4th at 883 ("[C]onsumers would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant."); *accord McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (reasonable consumers may consider "general knowledge about" the product). The unreasonableness of Bruno's alleged belief that "mountain spring water" is free of microplastics is bolstered by FDA's own recognition that bottled water may contain myriad "synthetic or artificial" substances and still be safe for consumption and properly labeled as "spring water." *See* 21 C.F.R. § 165.110(b).

Nor would reasonable consumers interpret "100% Mountain Spring Water" as a guarantee of the absence of non-ingredient, migratory substances. In *Richburg v. Conagra Brands, Inc.*, a court interpreting analogous state consumer protection laws dismissed similar claims that popcorn was deceptively marketed as containing "only real ingredients" because it contained traces of PFAS used in its packaging. 2023 WL 1818561. The court concluded that reasonable consumers would not consider such "migratory chemicals" to be an undisclosed "ingredient" given the FDCA's exemption of "[s]ubstances migrating to food from equipment or packaging" from inclusion in the ingredient list. *Id.* at *7 (citing 21 U.S.C.A. § 343(i); 21 C.F.R. § 101.100(a)(iii)).

Similarly, in *Axon v. Florida's Natural Growers, Inc.*, the Second Circuit held that "a reasonable consumer, viewing the brand name 'Florida's Natural,' would not make assumptions regarding the presence or absence of trace amounts of glyphosate" in orange juice, because it was not an added ingredient. 813 F. App'x 701, 705 (2d Cir. 2020); *accord Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 244, 247 (S.D.N.Y. 2019) ("a reasonable consumer" of pet food "would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount…."). The same is true here.

Bruno does not, and cannot, allege the Arrowhead® spring water he bought

- 14 -

1   was not in fact sourced entirely (*i.e.*, 100%) from mountain springs and did not

2   otherwise meet FDA requirements. The description "100% Mountain Spring Water"

3   was true, and could not have misled a reasonable consumer. Thus, Bruno's claims

4   should be dismissed.

5               **C. If Bruno Bases His Claims on Nondisclosure, They Fail.**

6         While not entirely explicit in his SAC, Bruno appears to base his claims on an

7   affirmative misrepresentation (i.e., the word "100%") and a non-disclosure (i.e., no

8   warning that the product was "adulterated"). In the consumer protection context,

9   "California courts have generally rejected a broad obligation to disclose." *Wilson v.*

10  *Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir. 2012). Instead, relying on

11  *Daugherty v. American Honda Motor Co.,* 144 Cal. App. 4th 824 (2006), "California

12  federal courts have generally … [held] that a manufacturer's duty to consumers is

13  limited to its warranty obligations absent either an affirmative misrepresentation or a

14  safety issue." *Id.* (cleaned up).

15        As demonstrated above, "100% Mountain Spring Water" is not an actionable

16  or misleading representation when describing "spring water" sourced entirely from

17  mountain springs. Thus, to proceed under a non-disclosure theory, Bruno must allege

18  in a specific and particularized manner the concealed matter—microplastics—

19  presents a safety concern. *See Benavides v. Kellogg Co.,* No. 10-2294, 2011 WL

20  13269720, at *5 (C.D. Cal. Mar. 21, 2011) (dismissing CLRA claim based on non-

21  disclosure of alleged contaminant where complaint did not include particularized

22  allegations of a safety threat).

23        Bruno fails to allege specific facts showing the alleged microplastic particles

24  threaten human safety. The closest he comes are allegations that exposure "can lead

25  to gastrointestinal" and "cardiovascular problems," and unspecified "[m]icroplastics

26  transport environmental contaminants like heavy metals and harmful bacteria into the

27  intestines of people who consume them." SAC ¶¶ 16, 35. But Bruno undermines his

28  own theory by alleging elsewhere that the "studies" he cites were performed on

- 15 -

"marine invertebrates," fish, and mice, and "the pathophysiological consequences of acute and chronic exposure to microplastics in mammalian systems, ***particularly in humans***, are not yet fully understood." *Id.* ¶ 14 (emphasis added). Bruno thus pleads himself out of a claim based on non-disclosure of a safety risk. *See, e.g.*, *Daugherty,* 144 Cal. App. 4th at 835-36 (dismissing non-disclosure claims where "[t]he complaint [was] devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect").

Additionally, to state non-disclosure claims, Bruno must plausibly allege Arrowhead® bottled water products contained microplastic particles in an amount BTB knew to be harmful when Bruno made his purchase. *See, e.g.*, *Wilson*, 668 F.3d at 1145-46 (CLRA and UCL non-disclosure claims require "[p]laintiffs [to] show that HP was aware of the alleged defect at the time the Laptops were sold"); *Punian v. Gillette Co.*, No. 14–05028, 2015 WL 4967535, at *9-10 (N.D. Cal. Aug. 20, 2015) (allegation that "consumers [had] filed 'numerous complaints'" with defendants did not establish knowledge). Bruno does not allege BTB knew of a potentially harmful level of microplastics in Arrowhead® brand bottled spring water when he purchased the product, or today.

### D. Bruno Fails to State a Claim Under the UCL's "Unfair" and "Unlawful" Prongs.

Bruno similarly fails to state a claim under the "unfair" and "unlawful" prongs of the UCL. To state an "unfair" prong claim, Bruno "must allege facts that Defendant's practice offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Chong v. Nestlé Waters N. Am., Inc.*, No. 19-10901, 2020 WL 7690175, at *9 (C.D. Cal. Nov. 30, 2020), *aff'd sub nom. Chong v. Nestlé Water N. Am., Inc.*, No. 20-56373, 2021 WL 4938128 (9th Cir. Oct. 22, 2021). He does neither. As explained above, Arrowhead® bottled spring water is "not mislabeled or apt to mislead the reasonable consumer," because it is undisputedly sourced entirely from mountain springs and

- 16 -

otherwise meets FDA's requirements. *Id.* Moreover, where an "unfair prong claim overlaps entirely with [a] claim under the fraudulent prong," the unfair prong claim cannot survive without the fraudulent prong claim. *Sue Shin v. Campbell Soup Co*., No. CV 17-1082, 2017 WL 3534991, at \*8 (C.D. Cal. Aug. 9, 2017). Because Bruno "does not suggest any other reason the Arrowhead [w]ater labeling would be immoral, unethical, or otherwise satisfy the requirements for a UCL unfair prong claim," *Chong*, 2020 WL 7690175, at \*9, his unfair prong claim fails.

If Bruno bases his "unlawful" claim on a violation of the FDCA, it is impliedly preempted for the reasons discussed in Section IV.A, *supra*. *Shin*, 2017 WL 3534991, at \*5. Because Bruno otherwise premises his "unlawful" claim on violations of the UCL, "it fails for the reasons already discussed." *Id*.

### E. Plaintiff Fails to Allege Reliance.

Bruno also fails to plead reliance with specificity, or that the label claim caused an alleged injury. *See Guzman v. Polaris Indus., Inc*., No. 8:19-cv-01543, 2020 WL 2477684, at \*3-4 (C.D. Cal. Feb. 13, 2020) (discussing "actual reliance" requirement). Alleging he "read and relied upon Defendant's '100% Mountain Spring Water' labeling" because it "led [him] to believe that Defendant's Products would be superior in quality to other products that did not contain ['100%'] labeling," SAC ¶¶ 50, 53, falls short of Rule 9(b)'s heightened pleading requirement. Courts in this district have held similar allegations—including that "the plaintiff was exposed to, read, and relied upon the Misbranded Claims" and otherwise "would not have purchased the product at all or would only have been willing to pay less"—are "too conclusory." *Gumner v. PepsiCo, Inc*., No. SACV 23-00332, 2023 WL 9019040, at \*4 (C.D. Cal. Aug. 3, 2023) (cleaned up); *see also Guzman*, 2020 WL 2477684, at \*3 (alleging sticker was "visible at the point of sale" cannot establish reliance). Like Bruno's prior complaints, the SAC lacks "factual allegations concerning the circumstances of [Bruno's] purchase of the product," such as how he "intended to use the product," and whether he "consumed" it. *Gomez v. Jelly Belly Candy Co*.,

- 17 -

No. 17-00575, 2017 WL 2598551, at *2 (C.D. Cal. June 8, 2017).  Bruno's "cursory, formulaic recitation is insufficient to state a plausible claim for relief."  *Id.*

### F. Bruno Fails to Allege Actual Injury and Damages.

Bruno's claims fail for another reason:  he does not plausibly allege injury or damages.  "To properly plead an economic injury, a consumer must allege" exposure to "false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation."  *Babaian v. Dunkin' Brands Grp., Inc.*, No. LACV 17-4890, 2018 WL 11445614, at *7 (C.D. Cal. Feb. 16, 2018).  A "hollow, conclusive assertion that" the disputed products are "worth less than what the putative class members paid/pay for them" is insufficient.  *Id.*  Bruno's unsupported allegations that he did not receive "the benefit of the bargain," SAC ¶ 43, and "paid a price premium for a premium product, but instead received a non-premium Product with Microplastics," *id.* ¶ 51, do not pass muster.

In *Babaian v. Dunkin' Brands Group, Inc.*, the court dismissed the plaintiff's claim that he paid a price premium for donuts because he "'bargained for and paid for" donuts with "real blueberries and maple rather than artificial flavoring."  2018 WL 11445614, at *8.  It held the "factual support for Plaintiff's allegation of a price premium is too tenuous for this Court to accept" because he did not allege, for example, the donuts were priced higher than competitors' products.  *Id.*  The mere "allegation that real ingredients are more expensive than artificial ingredients is insufficient to give rise to these inferences of price-value differentials in the market."  *Id.*

The same reasoning applies here.  Bruno's bare allegation that he paid more for "premium" bottled spring water because he believed it did not contain microplastics does not create an inference of a price-value differential in the market for spring water.  Bruno's allegation that Walmart's store-brand bottled purified water currently costs less than Arrowhead® brand bottled spring water he bought in

2022, SAC ¶¶ 48-49, does not help him.  To start, Bruno does not allege the price of Great Value water in October 2022.  Regardless, Great Value purified water is an improper comparator, because Bruno does not, and cannot, allege it is sourced entirely from mountain springs.  In fact, Great Value is "purified water," which may be treated water sourced from a "community water system," *i.e.*, tap water.  *See* 21 C.F.R. § 165.110(a)(2)(iv) and (3)(ii).  Treated tap water is self-evidently incomparable to water sourced from mountain springs.  This independent ground also warrants dismissal.

### G. Alternatively, Bruno Lacks Standing to Seek Injunctive Relief and Assert Claims on Behalf of Consumers Outside California.

Bruno's prayer for injunctive relief should be dismissed because he lacks standing to pursue it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff seeking injunctive relief must allege a "real and immediate threat of repeated injury." *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019).  To have standing for injunctive relief, a consumer asserting false advertising claims must allege they want or intend to purchase the product again. *See, e.g.*, *id.*

Bruno does not do so.  Alleging he "desires to purchase truly 100% water beverages" and "will by [sic] unable to determine if Defendant's '100%' labeled products are actually 100% water" unless BTB is "forced to correct the fraudulent labeling or remove the microplastics" is insufficient.  SAC ¶¶ 44-46.  In *Joslin*, the court rejected an analogous allegation—that "if [plaintiffs] encounter the Products in the future, they cannot rely on the truthfulness of the Products' packaging"—because the plaintiffs did not "allege they want to or intend to purchase *the Products* in the future."  2019 WL 5690632, at *3 (emphasis added); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (dismissing request for injunctive relief in "complete absence of any allegations about Plaintiff's future intentions with regard to the Product").

BLUETRITON BRANDS, INC.'S MOTION TO DISMISS
CASE NO. 2:24-CV-01563-MWF (JPRx)

1       Further repleading cannot cure this defect.  Bruno now knows the "100%

2   Mountain Spring Water" label claim does not refer to microplastics.  Indeed, he

3   alleges *all* bottled water contains microplastics.  *See*, *e.g.*, SAC ¶¶ 12 (citing "global

4   study on synthetic microplastic contamination in bottled water" generally), ¶¶ 15-16

5   (citing alleged health effects).  "The import of" these allegations is that BTB "can do

6   nothing to alter its advertising or product to make" its bottled water "beneficial to"

7   Bruno.  *Anthony v. Pharmavite*, No. 18-CV-02636, 2019 WL 109446, at *6 (N.D.

8   Cal. Jan. 4, 2019).  Consequently, he cannot seek injunctive relief.  *Id.*

9       Bruno similarly lacks standing to represent a nationwide class.  *See* SAC ¶ 59.

10  Bruno alleges he resides in Los Angeles, and does not allege he made any purchase

11  elsewhere.  *See id.* ¶ 5.  Thus, he lacks standing to represent purchasers outside of

12  California.  *See Young v. Mophie, Inc.*, No. SACV 19-827, 2019 WL 5173770, at *5

13  (C.D. Cal. Oct. 9, 2019).

14   ### H. Alternatively, Bruno's Complaint Should Be Dismissed Under
15   the Primary Jurisdiction Doctrine.

16      If the Court does not dismiss Bruno's claims on other grounds, dismissal is

17  also warranted under the primary jurisdiction doctrine to allow FDA to determine

18  whether "spring water" may contain the alleged substances.  "The primary

19  jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint

20  without prejudice pending the resolution of an issue within the special competence

21  of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114

22  (9th Cir. 2008).  Courts weigh four factors: "(1) the need to resolve an issue that (2)

23  has been placed by Congress within the jurisdiction of an administrative body having

24  regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

25  comprehensive regulatory authority that (4) requires expertise or uniformity in

26  administration."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775,

27  781 (9th Cir. 2002).

28

AMERICAS 126652331

1    FDA has the authority to, and does, regulate bottled spring water contents and

2    labeling.  In a similar case involving "purified water," another court in this district

3    held that preemption barred the plaintiff's label claims and the case should be

4    dismissed based on FDA's primary jurisdiction.  The court held that because "[t]he

5    FDCA establishes a uniform federal scheme of food regulation to ensure that food is

6    labeled in a manner that does not mislead consumers … any claims regarding what

7    concentration of microplastics might violate the FDA's regulations concerning

8    ['spring water'] would implicate technical and policy claims better suited for decision

9    by the FDA." *Baker*, 2019 WL 960204, at *3.

10    If this Court does not otherwise dismiss the SAC, it will be necessary for FDA,

11    the agency with the requisite expertise, to resolve technical issues on a uniform,

12    nationwide basis.  Bruno alleges that FDA has not specified "allowed concentrations

13    of epoxy resin, rubber, polyvinyl chloride, polypropylene, polyarylamide, polyvinyl

14    alcohol, and a styrene based thermoplastic elastomer" in bottled water.  SAC ¶ 31.  If

15    existing tolerance levels for these substances are deemed not to apply to bottled

16    water, issues that must be addressed in resolving Bruno's claims would include, for

17    example: (1) what level of each substance in bottled spring water is acceptable;

18    (2) whether water FDA expressly requires be labeled as "spring water" may contain

19    any or all these substances; and (3) whether bottled water manufacturers should have

20    to test for the substances and disclose their presence on the label.  *See In re Gerber*

21    *Prod. Co. Heavy Metals Baby Food Litig.*, No. 121CV269MSNJFA, 2022 WL

22    10197651, at *13 (E.D. Va. Oct. 17, 2022) (invoking primary jurisdiction doctrine

23    where "no tolerance level has been set and no labeling requirement exists for Heavy

24    Metals in Defendant's Baby Food Products").

25    In *Baker*, the plaintiff alleged use of the claims "pure" and "purified" on the

26    label of bottled water was misleading due to purported microplastics content.  *Id*.

27    The court applied the primary jurisdiction doctrine because "Congress has placed …

28    the labeling of bottled water as pure or purified … squarely within the jurisdiction of

- 21 -

the FDA and [they] depend on the FDA's expertise." *Id.*; *see also Tran v. Sioux Honey Ass'n Coop.*, No. 8:17-cv-110, 2017 WL 5587276, at *2-3 (C.D. Cal. Oct. 11, 2017) (complaint "ostensibly about the meaning of terms 'Pure' or '100% Pure'" was really about safe level of potential toxin, and thus better suited for decision by FDA).

The same regulations govern the labeling of bottled water as "spring water." Thus, if the Court does not dismiss the entire SAC, it should dismiss this action to allow FDA the opportunity to evaluate tolerance levels and labeling requirements for microplastics in bottled water, as in *Baker*.

## V.    CONCLUSION

BTB respectfully requests the Court dismiss the SAC with prejudice.

Dated:  June 18, 2024                WHITE & CASE LLP

By: */s/Bryan A. Merryman*
        Bryan A. Merryman

Attorneys for Defendant
BLUETRITON BRANDS, INC.

1

## **<u>CERTIFICATE OF SERVICE</u>**

2       The undersigned, counsel of record for the defendant, certifies that this brief

3   contains 6,992 words, which complies with the word limit of L.R. 11-6.1.   The

4   undersigned also hereby certifies that a true and correct copy of the foregoing

5   document was filed in the Court's CM/ECF System this 18th day of June 2024, and

6   thereby served on all counsel of record.

7

8                                                           By:    */s/Bryan A. Merryman*

9                                                                  Bryan A. Merryman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -